STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. VINCENT
M. ABBATI, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 8, 1984—Decided July 20, 1984.

Before Judges MATTHEWS, J.H. COLEMAN and GAUL-KIN.

*Frederick P. DeVesa,* Assistant Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General, attorney; *Linda K. Calloway,* Deputy Attorney General, on the brief).

*Mark E. Roddy* argued the cause for respondent (*Goldenberg, Mackler & Sayegh, P.A.,* attorneys).

The opinion of the court was delivered by

GAULKIN, J.A.D.

Defendant was tried twice on charges of first-degree kidnapping (*N.J.S.A.* 2C:13–1(b)(1)), first-degree aggravated sexual assault (*N.J.S.A.* 2C:14–2(a)(3) and (4)), fourth-degree unlawful possession of knives (*N.J.S.A.* 2C:39–5(d)) and third-degree possession of a knife for an unlawful purpose (*N.J.S.A.* 2C:39–4(d)). Each prosecution ended in a mistrial when the jury reported itself deadlocked. On defendant's subsequent motion, and over the objection of the prosecutor, the trial judge dismissed the indictment with prejudice. Relying on *State v. Moriwake,* 65 *Hawaii* 47, 647 *P.*2d 705 (1982), the judge concluded that he had "inherent power to dismiss the indictment" and that a weighing of the relevant criteria justified invocation of "that awesome power." The State appeals, arguing that "absent statutory authority or a demonstrated showing of a violation of defendant's constitutional rights, the court was without power to dismiss the prosecution."

██ Judicial authority to oversee prosecutorial decision-making is not so limited as the State urges. The court surely has the right to exercise statutory authority to dismiss an indictment upon a proper showing. See, *e.g., N.J.S.A.* 2C:2–11 (*de minimis* infractions). And it has the obligation to terminate a criminal prosecution which is constitutionally infirm. See, *e.g., State v. Merlino,* 153 *N.J.Super.* 12 (App.Div.1977)

(dismissal of indictment on speedy trial ground). But the court is not powerless to act in the absence of statutory authority or constitutional compulsion. As Justice Handler said in *State v. Gaffey*, 92 *N.J.* 374, 382–383 (1983), the "supervisory authority" of the courts with respect to enforcement of the criminal law "extends to the continued maintenance of criminal charges." Accordingly, the prosecutor may not dismiss an indictment without permission of the court. *State v. Kavanaugh*, 52 *N.J.* 7, 21 (1968), *cert.* den. *sub nom. Matzner v. New Jersey*, 393 *U.S.* 924, 89 *S.Ct.* 254, 21 *L.Ed.*2d 259 (1968). Nor may the prosecutor terminate an appeal without court approval. *State v. Gaffey, supra*, 92 *N.J.* at 383. We have recognized as well "the trial judge's right ... to dismiss an indictment for failure of the State to comply with rules of discovery." *State v. Laganella*, 144 *N.J.Super.* 268, 281 (App.Div.1976), app. dism. 74 *N.J.* 256 (1976); *R.* 3:13–3(f). Even before the Legislature specifically granted courts the authority to oversee pretrial intervention decisions (*N.J.S.A.* 2C:43–12 *et seq.*), our caselaw permitted judicial review. See *State v. Leonardis*, 73 *N.J.* 360 (1977). Justice Jacobs capsulized judicial oversight of prosecutorial discretion in *In re Ringwood Fact Finding Comm.*, 65 *N.J.* 512, 516–517 (1974):

> As recognized in *State v. Laws*, 51 *N.J.* 494, 510–511, *cert.* denied, 393 *U.S.* 971, 89 *S.Ct.* 408, 21 *L.Ed.2d* 384 (1968), the prosecutor has broad discretion in selecting matters for prosecution. While his discretion is broad, it "is not unregulated or absolute" (*State v. Winne*, 12 *N.J.* 152, 172 (1953)) and it may, in appropriate circumstances, be reviewed for arbitrariness or abuse. See *State v. LeVien*, 44 *N.J.* 323, 327 (1965); *cf. State v. Conyers*, 58 *N.J.* 123, 146–147 (1971); *State v. Ashby*, 43 *N.J.* 273, 276 (1964).' In our State, such review is readily available within the extraordinarily comprehensive prerogative writ jurisdiction which New Jersey's judicial system inherited from the King's Bench and which the 1947 State Constitution preserves. See *Monks v. N.J. State Parole Board*, 58 *N.J.* 238, 248–249 (1971); *In re Senior Appeals Examiners*, 60 *N.J.* 356, 369–370 (1972); *cf. Mayflower Securities v. Bureau of Securities*, 64 *N.J.* 85, 93 (1973).

Based on these precedents, we conclude that the court has inherent authority to review a prosecutorial decision to retry a defendant following one or more mistrials declared upon jury deadlock. See *United States v. Ingram*, 412 *F.Supp.* 384, 386

(D.D.C.1976); *State v. Moriwake, supra,* 647 *P.*2d at 712; *People v. Kirby,* 92 *A.D.*2d 848, 460 *N.Y.S.*2d 572 (1983); *State v. Witt,* 572 *S.W.*2d 913, 917 (Tenn.1978); *cf. State v. Lundeen* 297 *N.W.*2d 232 (Iowa Ct.App.1980).

Judicial review of such a decision, of course, must be conducted in accordance with established standards. Those standards have been articulated differently over the years. Justice Jacobs found the prosecutor's "discretion in selecting matters for prosecution" to be reviewable "for arbitrariness or abuse." *In re Ringwood Fact Finding Comm., supra,* 65 *N.J.* at 516. But in *Leonardis, supra,* 73 *N.J.* at 376, Justice Pashman found "ample authority ... to review prosecutorial decisions where there is a showing of patent and gross abuse." Judge Conford, concurring in *Leonardis,* noted the distinction between these two formulations and pointed out that Justice Pashman's standard of review restricted "judicial interference with the exercise of prosecutorial discretion considerably more tightly than under the conventional concept of judicial review of administrative action for arbitrariness." *Id.* at 392. Judge Conford endorsed the stricter standard for reasons which are equally relevant here:

> In my judgment, the range of considerations which can legitimately motivate a prosecutor to opt for prosecution of a particular offender is almost too broad for articulation in a set of guidelines and certainly transcends in breadth the standards commonly controlling exercises of discretion by the typical executive administrative agency. *(Ibid.)*

The same considerations of policy and practicality are equally persuasive here. As with a pretrial intervention decision, the decision whether or not to continue prosecution following mistrial is entrusted to the prosecutor in the first instance. Both decisions require the prosecutor to determine whether the needs of law enforcement justify burdening a defendant with a continuing prosecution. Both decisions involve the same broad range of considerations which can legitimately motivate the prosecutor. Both decisions should be given the same "great deference." *Id.* at 381.

██ We therefore hold that a defendant must establish that the prosecutor's decision to proceed to retrial is a patent and gross abuse of discretion before a court may properly overturn that decision and dismiss the indictment. A "patent and gross abuse of discretion" means, in this setting, that "the prosecutor's decision either failed to account for all the relevant factors, was based on irrelevant or inappropriate factors or constituted a 'clear error of judgment.'" *State v. Humphreys,* 89 *N.J.* 4, 13 (1982); see also *State v. Roth,* 95 *N.J.* 334, 364 (1984).

The decision whether to proceed to retrial calls for a balancing of the interest of the State in obtaining a determination on the merits and the interest of a defendant in being free from the burdens of a repetitive, and perhaps inconclusive, prosecution. Some of the factors to be considered in that balance were recited in *State v. Moriwake, supra,* 647 *P.*2d at 712–713:

(1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.

In *State v. Lundeen, supra,* 297 *N.W.*2d at 236, the court found the relevant considerations "should include, but are not limited to," the following:

(1) weight of the evidence of guilt or innocence; (2) nature of the crime involved; (3) whether defendant is or has been incarcerated awaiting trial; (4) whether defendant has been sentenced in a related or similar case; (5) length of such incarceration; (6) possibility of harassment; (7) likelihood of new or additional evidence at trial; (8) effect on the protection to society in case the defendant should actually be guilty; (9) probability of greater incarceration upon conviction of another offense; (10) defendant's prior record; (11) the purpose and effect of further punishment; and (12) any prejudice resulting to defendant by the passage of time.

█ The trial judge here gave specific consideration to such criteria in reaching his conclusion that the prosecution should be terminated. But he gave no apparent deference at all to the prosecutor's contrary conclusion. We must therefore vacate

the order of dismissal and remand the matter to the trial judge for reconsideration under the standards herein stated.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

MATTHEWS, P.J.A.D., dissenting.

While I concur with the reasoning of the majority with respect to the extent of judicial authority to oversee prosecutorial decisionmaking, I must respectfully dissent from their reasoning and conclusion as to both the standard of review they establish and the conclusion that they reach in this case. The thrust of my dissent is not complex, it proposes that after two mistrials based on jury disagreement, absent juror or counsel misconduct and the proffer of new or additional evidence, judicial discretion should govern the right of the State to retry defendant.

A brief summary of the facts of this case will give a frame of reference to the problem involved:

The State's proofs, if believed by the jury, established that defendant came upon S.D., the victim, while she was waiting for a bus. Brandishing a black handled knife, he forced her into his car, drove to a vacant lot and forced her to engage in sexual intercourse. He then took her to his apartment and introduced her to two friends, with whom she chatted casually because she was afraid of the defendant and them. At the first opportunity, she fled the apartment, leaving behind her hat, gloves and scarf. She hid in some bushes for 10 or 15 minutes until she saw a neighbor taking out his garbage. She then ran up to him, visibly upset, told him she'd been raped and asked for his assistance.

Defendant took the stand and denied ever threatening S.D. He claimed that, partially because of the cold that morning, he had offered S.D. a ride. After some conversation, they decided to go to a vacant lot to smoke a joint of marijuana provided by S.D. While there, as a result of the drug, they engaged in

consensual sexual contacts. Defendant and S.D. went to defendant's apartment to continue "partying," where defendant introduced S.D. to two of his friends. When he entered his bedroom to get a record, S.D. was chatting casually with his friends. When he came out, they informed him that S.D. had walked out of the apartment.

My difficulty with reliance on the standards established in *State v. Leonardis*, 73 *N.J.* 360 (1977), arises because that case deals with our Supreme Court's rulemaking power and a trial court's ability to admit a defendant to the Pre-Trial Intervention program over the objection of the prosecutor. Pretrial intervention involves the decision of the prosecutor as to whether there should be prosecution of a defendant under an indictment or whether the defendant should come under the program which ostensibly insulates him from prosecution. Although prosecutors generally have broad discretion in deciding whether or not to prosecute, diversion before trial is an exercise of quasi-judicial power. *Leonardis*, 73 *N.J.* at 378–379. It is an issue before the court, and therefore subject to judicial review. *Leonardis*, 73 *N.J.* at 380–381. Because of the extent of prosecutorial discretion, and the need for prosecutorial options, the scope of such review was limited. Although "review is necessary, the decision should lie, in the first instance, with the program director and the prosecutor." *Leonardis*, 73 *N.J.* at 301. The subject of *Leonardis*, pretrial intervention, involved the consent of the prosecutor not to prosecute after considering the factors presented to him. If the diversion is successful, the case will never be presented to the jury. The *Leonardis* standard, accordingly, I believe, can hardly be found relevant here.

Defendant has argued that, although not a clear case of double jeopardy, the underlying principles of fundamental fairness uphold this trial judge's dismissal of the indictment with prejudice. He claims that the trial judge exercised his discretion correctly.

In discussing double jeopardy, the United States Supreme Court has stated:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
>
> ....
>
> Moreover it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge. [*Green v. United States*, 355 *U.S.* 184, 187–188, 78 *S.Ct.* 221, 223, 2 *L.Ed.*2d 199, 204 (1957)]

A mistrial declared without defendant's consent and without a showing on the record of manifest necessity is a bar to further prosecution. *United States ex rel. Russo v. Superior Court of New Jersey*, 483 *F.*2d 7 (3 Cir.1973); *see United States v. Perez*, 22 *U.S.* 579 (9 *Wheat*), 6 *L.Ed.* 165 (1824). The inability of a jury to reach a verdict, after a fair trial, constitutes a manifest necessity which will not bar retrial. *United States v. Perez*, 22 *U.S.* at 580–581. *Cf. Richardson v. United States*, —— *U.S.* ——, 104 *S.Ct.* 3081, 82 *L.Ed.*2d 242 (1984) (failure of jury to reach a verdict does not terminate jeopardy, so that second trial is not barred by "double jeopardy" clause). At some point, however, the holdings of *Green* and *Perez* must contradict each other. A double jeopardy clause which allows retrial *ad infinitum* provided successive juries cannot agree on a verdict is fundamentally unfair, if not bad organic law.

I regard *Perez* as presenting an analogous situation wherein the court recognized its inherent authority to declare a mistrial for "manifest necessity." "[I]n all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." 22 *U.S.* at 580.

The rule established in *Perez* vests in trial judges a sound judicial discretion to balance the public interest in fair trials with defendant's right to have his trial completed by a particular tribunal. *State v. Witt,* 572 *S.W.*2d 913, 917 (Tenn.1978), citing *United States v. Jorn,* 400 *U.S.* 470, 91 *S.Ct.* 547, 27 *L.Ed.*2d 543 (1971).

In *Witt,* the Tennessee Supreme Court reasoned that it must follow logically that trial judges may also exercise a sound judicial discretion and find that defendants cannot be retried following multiple hung juries and a great probability of additional no verdict trials. Requiring defendants to do so would offend traditional notions of fair play and substantial justice. 572 *S.W.*2d at 917.

Under the present circumstances, no convenient measuring standard exists. Presumably, the same factors which went into the prosecutor's original decision to prosecute this case are still present. He has already exercised his discretion. He has prosecuted twice. The second trial was substantially a duplicate of the first, and, as was noted by the trial judge, very little use was made of the record of the first trial on cross-examination in the second. The issue in both trials was essentially one of credibility. Each jury was unable to arrive at a verdict. There must come a time when prosecutorial discretion ceases to be the controlling factor and becomes a factor, like any other, to be weighed in the balance. Considerations of due process and fundamental fairness, and other factors more properly in the area of judicial discretion should be applied.

In cases of other jurisdictions, courts have recognized their inherent power to dismiss an indictment after successive mistrials, even though the defendant's constitutional rights have not yet been implicated. The aspect of judicial power which seeks to administer justice is properly invoked when a trial court dismisses an indictment with prejudice following one or more mistrials due to genuinely deadlocked juries. *State v. Moriwake* (cited by the majority), 647 *P.*2d at 712. Trial judges

have the inherent authority to terminate a prosecution in the exercise of sound judicial discretion where repeated, error-free trials have resulted in genuinely deadlocked juries, substantially the same evidence will be presented at future trials and the probability of continued hung juries is great. *State v. Witt*, 572 *S.W*.2d at 917. *Accord, United States v. Ingram, supra*, 412 *F.Supp.* 384; *State v. Moriwake, supra; People v. Kirby*, 92 *A.D.*2d 848, 460 *N.Y.S.*2d 572 (1983).

In *State v. Lundeen*, also cited by the majority, 297 *N.W*.2d 232 (Iowa Ct.App.1980), the Iowa court reviewed a decision of a trial court to terminate three related criminal prosecutions before trial because in a fourth related case, the State had tried its best case and lost. Each of the charges involved the separate sale of intoxicating beverages to underaged individuals. In vacating the order because of an inadequate record, the Iowa Court of Appeals established some "relative considerations" to be considered by a trial judge on such application. While these "considerations" may be of some relevance to our inquiry here, I point out that they were established to govern a proceeding somewhat different from that under review.

The trial judge here gave specific consideration to such criteria in reaching his conclusion that the prosecution should be terminated. He stated:

The entire question must be viewed, considered, analyzed and decided in the shadow of, and against a backdrop of the fundamental and omnipresent proposition that the defendant is innocent until proven guilty and it is the State's burden to prove that guilt. Should the State, having failed to prove guilt, be permitted to indefinitely try the defendant until barred only by a unanimous pronouncement by 12 jurors that it has failed? Given the disabilities, stigma, financial hardship, uncertainty and restrictions that are visited upon a criminal defendant pending trial, it would seem to fly in the face of the national philosophy implicit in these constitutional safeguards to answer that question any way other than, no.

That principle established, the only question is how many times may the State have to prove its case. It should be immediately evident that "how many times" will vary. If something were amiss in the earlier proceedings or some new fact or witness came to light after the first and second trials, those factors would have to be considered. On the other hand, if the next trial is predictably a replay of the former, then the question of a third trial's validity in the face of

the national and state policy and philosophy of our criminal justice system is suspect.

With that attitude firmly in mind, the facts of this case must be examined in the light of the *Moriwake* criteria.

1. *The severity of the offense charged.* The offenses in this case are, with the exception of murder, as serious as criminal charges can be. This factor weighs equally for and against both parties. The State should be given the widest latitude (within the rule of law) possible to prove its case when the charges are serious. However, the defendant should be given equal consideration because of the enormity of the consequences to him.

2. *The number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known.*

There were two trials in this case. The jury deliberated for an extended period during each trial and each time was told to continue to deliberate even after it reported a deadlock.

3. *The character of prior trials in terms of length, complexity, and similarity of evidence presented.*

The case was not complex, took three days to try and the same evidence was presented each time.

The consistency of the testimony was apparent because counsel were not able to make extensive use on cross examination of the transcript from the first trial. It was a straight-forward credibility test of the victim against the defendant. There was little room for prejudicial legal error.

4. *The likelihood of any substantial difference in subsequent trial, if allowed.*

Since essentially the same evidence was adduced at trial two as at trial one, and there has been no proffer of new evidence, the likelihood of a substantially different presentation at trial three is remote.

5. *The trial court's own evaluation of the relative case strength.*

Since the jury is the trier of fact and this case was almost exclusively a credibility test of the victim against the defendant, this court feels that it is inappropriate for it to evaluate the case strength beyond that one observation.

6. *The professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.*

The prosecutor and defense attorney were the same in trials one and two and will remain the same in a third trial if the defendant can afford to pay private counsel the third time. At trial two, over which this court presided, both attorneys were capable, well prepared, aggressive and enthusiastic advocates. The witnesses had been interviewed, the law researched, the problems anticipated and well thought through. Both counsel are experienced criminal trial attorneys. No quarter was given but no unfair advantage taken by either.

There is no indication that a third trial will proceed in a manner different than the preceding two nor is there any reason to believe that a more homogeneous jury will be selected. No one has intimated that there was any defect in the composition of the preceding two juries....

Under the circumstances presented in this case I cannot conclude that the prosecutor, absent a proffer of new or additional evidence—which is not forthcoming, should be permitted to pursue his quest for a conviction in a third trial solely in the hope that the mix of a third jury might be inclined to convict on the same evidence. Justice is not a game of chance.

The discretion of a trial judge to terminate a criminal prosecution is a power that should be exercised with the greatest caution, and only in the most urgent circumstances and for very plain and obvious causes, similar to those involved in finding manifest necessity for the declaration of a mistrial. *State v. Witt*, 572 *S.W.*2d at 917. I find no mistaken exercise of discretion here.

I would affirm.