STATE of Tennessee, Petitioner,

v.

Myles WITT and Claude W. Folk, Respondents.

Supreme Court of Tennessee.

Nov. 6, 1978.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, for petitioner.

Philip P. Durand, Ambrose, Wilson Lockridge & Grimm, Knoxville, for respondents.

## OPINION

FONES, Justice.

The trial judge, upon motion of defendants, dismissed the indictments for murder in the first degree, after three mistrials had been declared because of deadlocked juries. The issue is whether the trial judge had authority to dismiss this prosecution either in the exercise of a sound judicial discretion or upon the constitutional grounds of double jeopardy, cruel and unusual punishment or due process.

Defendants Witt and Folk and one Marvin E. Kelley were indicted for murder in the first degree in August, 1974. The first trial required six days in October of 1974, the second trial required five days in June, 1975, and the third trial required five days in June, 1976. All three juries reported hopelessly deadlocked as to the guilt or innocence of Witt and Folk. The third trial jury acquitted Marvin Kelley.

The record brought to this Court does not reflect the length of time that each of the three juries deliberated.[1] However, no contention was made by the State or defendants that the trial judge declared a mistrial prematurely on any of the three occasions. We are therefore entitled to, and do, assume that each of the three juries deliberated until it was clearly demonstrated to the satisfaction of all the parties, counsel and the trial judge, that a unanimous verdict of guilt or innocence could not be returned as to Witt and Folk at any one of the three trials. The trial judge at the first trial was H. C. Smith and Tillman Grant presided at the second and third trials and granted defendants' motion to dismiss.

All three defendants moved to dismiss the indictments, following the second mistrial, which motions were overruled. Similar motions were filed by Witt and Folk after the third jury failed to agree on a verdict. The motions were predicated on the constitutional grounds of double jeopardy, cruel and unusual punishment and due process. A hearing on defendants' motions was held on December 13, 1976, at which time defendants and the State presented oral argument. Defendants' motions were supported by the affidavits of two jurors who served on the third trial jury, each to the effect that that jury voted 8 for acquittal and 4 for conviction of various offenses and expressing the belief that no jury would ever agree on a verdict on substantially the same evidence presented at that trial. The State questioned the efficacy of the affidavits as proof, and the trial judge continued the hearing to December 28, 1976, at which time defendants presented eight witnesses. Among the eight witnesses were jurors from each of the three trials and all of those testifying expressed the opinion that no future jury would agree on a verdict, assuming the presentation of substantially the same evidence which they had heard.

At the first hearing the trial judge said that the "big question" in his opinion was, "can this court, or any court ever get a jury that will decide this case in view of the past history?" After hearing defendants' proof and argument of counsel at the second hearing on the motions, the experienced and distinguished trial judge, from the vantage point of having presided over the second and third trials and having studied Judge Smith's extensive notes on the evidence presented at the first trial observed, in essence, that both the State and defendants had received three fair and impartial trials before three competent juries; that he particularly recalled that the third jury was an exceptionally good jury, that they knew little or nothing about the case, being

---

1. During the course of the trial judge's ruling from the bench, on defendants' motion to dismiss on December 28, 1976, he stated that, to the best of his recollection, the jury in the June, 1976, trial deliberated from 3:00 or 3:30 p. m. to 6:00 or 6:30 p. m. reported, were sent back, and deliberated further until about 9:00 p. m.

from the Sweetwater area, that the Attorney General and defense attorneys "almost beg[ged] the jury to reach a verdict one way or the other, and still they didn't reach a verdict." The trial judge, exercising the "Courts discretionary right . . . in the interest of justice" dismissed the indictments, implicitly answering the question of whether any future jury would agree on a verdict in the negative. The Court of Criminal Appeals affirmed.

In 1824, the United States Supreme Court rejected a plea of double jeopardy, based upon the trial judge's discharge of the jury, without defendant's consent, when the jury could not agree upon a verdict following defendant's first trial for a capital offense. *United States v. Perez*, 22 U.S. (9 Wheaton) 579, 6 L.Ed. 165 (1824). Mr. Justice Story writing for the Court reasoned as follows:

"The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases, especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." 22 U.S. at 580.

In *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the Supreme Court was considering a case wherein the trial judge had declared a mistrial over the defendant's objection because he concluded the indictment was insufficient to charge a crime under Illinois law. The issue was whether the mistrial met the manifest necessity requirement which would defeat defendant's double jeopardy claim under *Perez*. After quoting from *Perez* the *Somerville* Court continued as follows:

"This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court. . . .

．　　．　　．　　．　　．

In reviewing the propriety of the trial judge's exercise of his discretion, this Court, following the counsel of Mr. Justice Story, has scrutinized the action to determine whether, in the context of that particular trial, the declaration of a mistrial was dictated by 'manifest necessity' or the 'ends of public justice.' The interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest. This consideration, whether termed the 'ends of public justice,' *United States v. Perez, supra*, at 580 of 22 U.S. or, more precisely, 'the public's interest in fair trials designed to end in just judgments,' *Wade v. Hunter, supra*, at 689 of 336 U.S., at 837 of 69 S.Ct. has not been disregarded by this Court." 93 S.Ct. at 1069–1070.

In *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), Mr. Justice Douglas, in affirming the manifest necessity rationale of *Perez* said, "The classic example is a mistrial because the jury is unable to agree." 372 U.S. at 736, 83 S.Ct. at 1034.

Thus, *Perez*, and its progeny, makes it certain that double jeopardy does not prevent retrial of a defendant after one mistrial resulting from a genuinely deadlocked jury.

We next consider cases dealing with two or more mistrials caused by hung juries.

In *Carsey v. United States*, 129 U.S.App. D.C. 205, 392 F.2d 810 (1967), defendant was convicted for the murder of his wife by the fourth jury he faced. The first and second trials ended with deadlocked juries. At his third trial the trial judge declared a mistrial because of improper final argument by defense counsel. Defendant's plea of double jeopardy at his fourth trial was sustained by the appellate court. However, as we read the decision, it was predicated on the absence of a manifest necessity for declaring a mistrial at the third trial rather than the prior two hung juries.

In *United States v. Gunter*, 546 F.2d 861 (10th Cir. 1976) the first trial of eight defendants resulted in a hung jury. At the second trial two defendants were convicted, and the jury could not agree on a verdict as to the other six defendants. The appellate court rejected their plea of double jeopardy based upon its interpretation of *Perez, Somerville,* and *Gunter,* but said, "There indeed may be a breaking point, but we do not believe it was reached in the instant case." 546 F.2d at 866.

In *Iowa v. White*, 209 N.W.2d 15 (Iowa 1973), defendant was convicted by the third jury he faced, his first two trials having ended with hung juries. The Supreme Court of Iowa rejected his plea of double jeopardy, but said, in part:

"On the other hand, repeated efforts to convict an individual for an alleged offense enhance the possibility that even though innocent he may be found guilty, subject him to embarrassment, expense and ordeal, and compel him to live in a continual state of anxiety and insecurity. At some point such pursuit must end." 209 N.W.2d at 16.

In *Preston v. Blackledge*, 332 F.Supp. 681 (E.D.N.C.1971), defendants were convicted at their fifth trial, four prior trials having resulted in hung juries. The district judge held that jeopardy attached after the fourth jury failed to agree, precluding a fifth trial.

In *United States v. Castellanos*, 478 F.2d 749 (2nd Cir. 1973), the trial judge dismissed the prosecution on defendant's pleas of double jeopardy following two mistrials caused by hung juries. The appellate court reversed, saying in part:

"Judge Dooling recognized this tension between the rights of the accused and the public interest, and held that the appropriate balance was struck by limiting the government to two bites at the apple, at least where it appeared that no new evidence would be introduced at a third trial. But such an approach is the kind of 'mechanical application of an abstract formula' that the cases condemn. *Wade [v. Hunter], supra,* 336 U.S. at 691, 69 S.Ct. at 838. *See also, Illinois v. Somerville, supra.* Indeed, the Supreme Court decisions make it clear that it is the *Perez* standard itself which embodies the appropriate balancing test—the defendant's interests bar retrial in all but those instances where there is 'manifest necessity' for taking the case away from the jury. Since each mistrial was properly declared here, the Perez formulation tips the balance in the government's favor, and does not constitutionally bar retrial." 478 F.2d at 752.

We are in agreement with the reasoning of the *Castellanos* Court and reject the application of the constitutional ground of double jeopardy to the instant case.

Defendants have not cited any relevant authority supporting the application of the constitutional grounds of cruel and inhuman treatment or due process to the facts of this case. We think this case involves an element not present in any reported case dealing with multiple trials that ended in deadlocked juries. It is clear that the trial judge made a finding, upon his sound judicial evaluation of the evidence, supported by opinions of jurors who had heard the evidence and participated in deliberations

seeking to reach a verdict, that the probability of any future jury reaching a verdict of guilt or innocence is almost nonexistent. In substance that is tantamount to a determination that the evidence presented by the State to three different juries was insufficient to obtain a jury verdict of conviction. The record is devoid of any suggestion that any other factor could have caused or contributed to the hung juries, such as complicated or confusing instructions, erroneous admission or rejection of evidence, emotional factors, etc.

While it is conceded that the State has presented sufficient evidence at each trial to require submission of the case to a jury, that evidence has proven insufficient to convict on three occasions and the trial judge, who is in the best position to evaluate the evidence, does not believe that any future jury will agree on a verdict.

■ We do not think that the relief applicable here can be accurately labelled double jeopardy, cruel and unusual punishment or due process. However, we think that trial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where, as here, repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and that the probability of continued hung juries is great.

■ The *Perez* rule vests in trial judges a sound judicial discretion to balance the public interest in fair trials designed to end in just judgments, with defendant's valued right to have his trial completed by a particular tribunal,[2] with the result that upon a finding of manifest necessity to declare a mistrial, defendant can be tried again. It must logically follow that trial judges may also exercise a sound judicial discretion and find, under the guidelines expressed above, that defendant cannot be tried again following multiple hung juries and a great probability of additional no verdict trials. Requiring defendants to face

additional juries with the continuing prospect of no verdict offends traditional notions of fair play and substantial justice.

■ This opinion is not to be construed as fixing the permissible or impermissible number of mistrials caused by deadlocked juries. Like the *Perez* rule, the relevant principles must be applied on an *ad hoc* basis. The sound judicial discretion of a trial judge to terminate a criminal prosecution is a power that ought to be used with the greatest caution and only in the most urgent circumstances and for very plain and obvious causes, as said by Justice Story in *Perez*, with respect to the discretion to be exercised in finding manifest necessity for the declaration of a mistrial. The trial judge's action is, of course, subject to review for an abuse of discretion. There is no evidence of abuse of discretion in the record the State has brought to the appellate courts.

Affirmed.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

---

2. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).