706 So.2d 611 (1998)
STATE of Louisiana
v.
Curtis Lee KYLES.
No. 97-K-2660.
Court of Appeal of Louisiana, Fourth Circuit.
January 21, 1998.
*612 Harry F. Connick, District Attorney, Margaret Lagattuta, Assistant District Attorney, New Orleans, for Respondent.
Denise LeBoeuf, Nicholas J. Trenticosta, New Orleans, and Michael S. Fawer, Smith, Jones & Fawer, Covington, for Relator.
Before ARMSTRONG, PLOTKIN and WALTZER, JJ.
WALTZER, Judge.
Relator seeks review of the trial court's denial of his Motion to Bar a Fifth Trial. In the interest of clarity a brief recitation of the litigation history is necessary.
On 8 December 1984 Relator was convicted of first degree murder, and he was subsequently sentenced to death. His conviction and sentence were affirmed on appeal. State v. Kyles, 513 So.2d 265 (La.1987), cert. den. Kyles v. Louisiana, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). Relator sought post conviction relief in both the State and Federal Courts. On 19 April 1995 the United States Supreme Court reversed his conviction and sentence and remanded the case for further proceedings. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
After a multitude of pretrial motions, hearings, and writ applications, Relator was brought to trial in an ad hoc section of the Criminal District Court, the Honorable Charles Ward presiding. After a two week trial, a mistrial was declared on 18 October 1996 because the jury was hopelessly deadlocked. The case was continued without date pending a meeting between the prosecution and the defense to select a new trial date. On 14 November 1996 the case was returned to Section "G" of the Criminal District Court, where the trial judge was forced to recuse himself. The case was reallotted to Section "C" of the Criminal District Court, but that judge also declined to try the case. In April 1997, the Supreme Court appointed a new ad hoc judge.
Relator's fourth trial commenced on 2 September 1997 before Judge Mansour. On 14 September 1997, the court declared a mistrial because the jury was hopelessly deadlocked. On 24 September 1997, the Supreme Court appointed a new ad hoc judge, the Honorable Robert Burns. Both the prosecution and the defense filed various motions before Judge Burns, many of which had previously been filed and ruled upon by prior judges.[1]

RELATOR'S MOTION TO BAR A FIFTH TRIAL
In this writ application, Relator seeks review of the trial court's ruling of 31 October 1997, denying his pleading styled "Motion to Bar a Fifth Retrial." When the motion was presented in the trial court, testimony was presented from Professor Bennett Gerhman, an expert in prosecutorial ethics and conduct. The Court denied the motion after considering the evidence and memoranda that had been submitted.[2]
Before we consider the ruling of Judge Burns, we have perused the docket master of this case. The docket and entries show that the issue of barring a retrial had been heard and denied prior to the appointment of Judge Burns. More particularly, the docket master shows that just prior to the last trial in September of 1997, the defense filed a "Motion to Bar Re-Trial on Double Jeopardy Grounds." Judge Mansour denied the motion; Relator noted an objection and was given until 3 September 1997 to file a writ. The defense did not do so.
*613 Thereafter, on 14 September 1997, when the jury was unable to reach a verdict, the trial court examined the jury and declared a mistrial. Relator at that time "re-urged" the defendant's motion to preclude prosecution. The trial court denied the motion. Relator once more noted an objection and was given until 15 September 1997 to file a writ application. The defense did not do so.
In the instant writ application, Relator makes no mention of the prior motions. Additionally, during the September 1997 trial, the defense filed an emergency writ in which Relator urged that a mistrial should be ordered because of the "egregious violations of prosecutorial misconduct in the form of subornation of perjury, the withholding of other evidence favorable to Mr. Kyles, and the improper questioning by the prosecutor." Two of the violations alleged in that writ, the testimony of Isaac Smallwood and improper questions posed to a witness regarding Professor Gerard Rault's relationship to executed murderer Sterling Rault, were the subject testimony by Professor Gerhman. This Court denied the writ stating that the defendant would have an adequate remedy on appeal if convicted. State v. Kyles, 97-2024 (La. App/ 9/11/97) unpub.

DOUBLE JEOPARDY, DUE PROCESS AND PROSECUTORIAL MISCONDUCT
Relator's argument to this Court is that double jeopardy, due process, and fundamental fairness mandate that he not be retried where prosecutorial misconduct has continued throughout the proceedings. However, as to the double jeopardy argument, Relator did not timely file a writ of review after the issue was decided adversely to him. Furthermore, the jurisprudence is almost uniform that double jeopardy does not bar a retrial if the mistrial was manifestly necessary because of a truly deadlocked jury. See Berch & Berch, Hung Juries: A Proposed Rule to Control Judicial Discretion, 30 Loy. L.A.L.Rev. 535 (1997).
As to the prosecutorial misconduct issues, the trial court found that mistrial was not warranted as the result of the prosecutor's conduct during the trial, and this Court found that exercise of our supervisory jurisdiction was not warranted.

FUNDAMENTAL FAIRNESSINHERENT POWER OF THE TRIAL COURT
The only new issue posed by this writ is a general claim that fundamental fairness requires that the defendant not be tried for a fifth time.[3]
Courts in other states have prevented retrials after juries deadlocked more than once pursuant to the exercise of a general inherent power of their courts to administer justice. See State v. Abbati, 99 N.J. 418, 493 A.2d 513, 515 (1985), State v. Moriwake, 65 Haw. 47, 647 P.2d 705, 708 (1982), and State v. Witt, 572 S.W.2d 913 (Tenn.1978). The court in Witt summarized the relief as follows:
We do not think that the relief applicable here can be accurately labelled double jeopardy, cruel and unusual punishment or due process, However, we think that trial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where, as here, repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and the probability of continued hung juries is great.
State v. Witt, 572 S.W.2d at 916. The court further found that "[r]equiring defendants to face additional juries with the continuing prospect of no verdict offends traditional notions of fair play and substantial justice." Id.
The court's language in Witt is applicable to the instant writ, because Louisiana courts possess the same inherent authority, and the trial court judge correctly so held in his judgment denying the Motion to Bar a *614 Fifth Trial. Cf. Sullivan v. State, 874 S.W.2d 699 (Tex.App. 1st Dist.1994), in which the court found that Texas courts have no general authority, whether written or not, inherent or implied, to dismiss a case without a prosecutor's consent.
The prosecution in its response to this writ argues that Louisiana courts, like Texas courts, have no inherent power to dismiss the case. The trial court at the 31 October 1997 hearing found that it did, but "decline[d] the invitation" to do so.
The trial court's finding that it possessed the inherent authority to dismiss the prosecution is correct because La.C.Cr.P. art. 17 states:
A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including the authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.
In State v. Mims, 329 So.2d 686, 688 (La. 1976), citing Article 17, the Court recognized that "[w]here the law is silent, it is within the inherent authority of the court to fashion a remedy which will promote the orderly and expeditious administration of justice." The Court specifically noted that the trial court had the authority to dismiss a case without prejudice when the prosecution was unwilling or unable to proceed with trial after having announced its readiness to do so.
Because the Court has the inherent authority to bar a retrial so that fundamental justice is done, the cases relied upon by Relator make clear that such a decision is a matter of sound judicial discretion by the trial court who heard the evidence, polled the juries, and is in the best position to know at what point "enough is enough". Furthermore, the trial court must give deference to the prosecution's choice to continue the prosecution. State v. Sauve, 164 Vt. 134, 666 A.2d 1164(1995). The factors adopted in other jurisdictions to be considered in the trial court's decision are:
1) the number of prior mistrials and reasons for them;
2) the character of the prior trials and similarity of evidence presented;
3) the likelihood of any substantially different result at a new trial;
4) the trial court's own evaluation of the strength of the parties' cases;
5) the conduct and diligence of counsels;
6) the seriousness of the offense;
7) the public's concern for the effective and definitive conclusion of criminal prosecutions;
8) the status of the defendant; and
9) the impact of retrial upon the defendant in terms of untoward hardship and unfairness.
Sauve, 666 A.2d at 1167.
We note that in this case Judge Mansour, who heard the testimony at the last trial, refused to bar a retrial, both before and after that trial. The 31 October 1997 ruling by the now presiding judge is in accord with that ruling.

CONCLUSION
Louisiana courts have the inherent authority to dismiss a prosecution on the basis of fundamental fairness, but a trial court's decision not to do so should not be reversed absent a gross abuse of discretion. We cannot say that there has been such an abuse of discretion by the two trial judges, one of whom presided over the most recent trial, who have refused to bar further prosecution, especially in light of Judge Burn's decision not to suppress the purported confession which Relator allegedly made to inmate Chris Alphonso in 1989. This evidence was unknown prior to the last two trials and will be evidence not previously presented to any jury.
ACCORDINGLY, SUPERVISORY WRITS OF REVIEW ARE GRANTED, THE JUDGMENT OF THE TRIAL *615 COURT IS AFFIRMED AND RELIEF IS DENIED.
NOTES
[1] Only one motion is clearly new. That motion pertains to a confession which the Relator allegedly made at the State Penitentiary in Angola in 1989. The inmate witness, Chris Alphonso, did not advise the prosecution of the purported confession until after the last mistrial. A hearing on that matter has been held; no writs have been filed to date.
[2] The trial judge stated: "... I have a motion to bar this future trial. That motion is denied. I consider this to be a separation of powers issue. The District Attorney of this parish is duly elected by our constitution to have certain powers. He is elected to retry Curtis Lee Kyles. I believe that I have the power, the inherent power, to bar this trial but after considering the evidence I've heard and the extensive memorandum that's been submitted, I decline the invitation to bar the next trial."
[3] The prosecution suggests in its response that the upcoming trial is only the defendant's third, not fifth, retrial. Relator's first trial resulted in a hung jury. The second trial a week later resulted in conviction and the death penalty. That conviction was reversed by the United States Supreme Court because of Brady violations by the prosecution. The next two trials also ended in mistrials when the jury deadlocked. Whether this is the defendant's "fifth retrial" or "third retrial" does not change the fact it is his FIFTH TRIAL.