# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## NOVEMBER 1996 SESSION



FILED

January 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9606-CC-00237 |
| | ) | |
| Appellee | ) | RHEA COUNTY |
| | ) | |
| v. | ) | HON. THOMAS W. GRAHAM, |
| | ) | JUDGE |
| BILL SANDELL, | ) | |
| | ) | aggravated sexual battery |
| Appellant | ) | |

**For the Appellant:**

Philip A. Condra
District Public Defender

B. Jeffrey Harmon
Assistant Public Defender
P.O. Box 220
204 Betsy Pack Dr.
Jasper, TN 37347

**For the Appellee:**

Charles W. Burson
Attorney General & Reporter

Elizabeth T. Ryan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

James Michael Taylor
District Attorney General

Will Dunn
Assistant District Attorney General
265 Third Ave., Ste. 300
Dayton, TN 37321

OPINION FILED _____

AFFIRMED

JOHN K. BYERS
SENIOR JUDGE

The defendant was indicted for rape of a child and convicted of the lesser included offense of aggravated sexual battery. He was sentenced to ten years in prison and was fined $25,000.00, which the trial judge reduced to $10,000.00 because of the defendant's indigency.

On appeal, the defendant challenges the trial court's method of impanelling the jury as inconsistent with Rule 24 of Tennessee Rules of Criminal Procedure, the trial court's denial of a mistrial when testimony of a continuing pattern of molestation was given, the trial court's admission of testimony as to the victim's "fresh complaint" and the trial court's imposition of a ten-year sentence and a $10,00.00, alleging that the punishment is excessive.

We affirm the judgment of the trial court.

The defendant lived with his wife, Tammy, and her children, Gary Barnes and the victim. The victim was 12 years of age. On October 4, 1992, the defendant gave his wife some Valium, and she fell asleep in the living room. After his wife fell asleep, the defendant came to the victim's room. He pulled down her jogging pants and underwear. He then told her to pull up her underwear and walk through the living room to the washer and dryer. The victim testified that he placed her seated on top of the washing machine, pulled down her pants and underwear again, pulled down his pants and placed his penis almost completely into her vagina. At this point, the victim's brother returned to the trailer and defendant stopped, telling her to go into her mother's bedroom and pretend she had fallen asleep there.

Standing in front of the washer, a person can view the front door and the living room, where the victim's mother was sleeping. A door opposite the washer and dryer leads to Tammy Sandell's bedroom. After Gary Barnes came into the trailer, the defendant announced that it was bedtime and that the victim needed to go to her own bedroom. She walked through the living room to her bedroom, and

her brother noticed that she seemed upset. He asked her whether anything was wrong, but she told him that nothing was wrong, she was just sleepy.

The next day, the victim told her friend, Ladawya Morgan, what the defendant had done to her the night before. She then talked with a teacher, Amy Bauer, about what had happened. As a result of these conversations, the victim decided to tell her mother what had happened. Ladawya Morgan went to the victim's home with her after school to lend her support. However, when they reached the victim's home, Tammy Sandell was not there.

The victim told her brother what had happened. He went to his grandparent's house and got a pistol. When the defendant and Tammy Sandell returned home, Gary Barnes pointed the pistol at the defendant. His uncle took the gun away from him, and he went back to his grandparent's house and called the police. In the meantime, the victim, Ladawya, Tammy Sandell and the defendant went inside the trailer. The defendant and the victim talked privately for a time, and she testified that he threatened her father and her mother. When the officer arrived, he suggested that everyone go to the Sheriff's office and make a report. The defendant, Tammy Sandell, Ladawya and the victim all traveled to the police station in the defendant's truck.

At the police station, Officer Charles Byrd spoke to all of the parties as a group. The victim, who was crying and very upset, told him that nothing had happened, that she had made it up because she was angry with the defendant. Officer Byrd and Karen Young, who works for the Department of Human Services, then spoke with the victim alone in Officer Byrd's office. She maintained that nothing had happened. Officer Byrd told everyone that they were free to go.

The defendant, Tammy Sandell, Ladawya and the victim left the police station. As they were riding in the truck, either Tammy Sandell or the victim said to the defendant, "Bill, you done it. You know you did." The defendant admitted that

3

he had done it and said that he would get his stuff together and leave but "just don't go to the law."

After dropping off Ladawya, the defendant, Tammy Sandell and the victim returned to the trailer. The victim's father, Kenny Caraway, had heard about what had happened, and he came to the trailer that same evening. He testified that the defendant told him to "give him two days and not go to the law, give him two days, he'd get his stuff and be out of here and [he'd] never see his face again."

The defendant challenges the trial court's method of impanelling the jury as inconsistent with TENN. R. CRIM. P. 24. The trial court seated twelve prospective jurors in the box and an additional twelve prospective jurors in the first two rows behind the bar for *voir dire*. The defendant complains that this is in violation of Rule 24(c), which provides:

> Peremptory Challenge and Procedure for Exercising. -- After twelve prospective jurors have been passed for cause, counsel will submit simultaneously and in writing, to the trial judge, the name of any juror either counsel elects to challenge peremptorily. Upon each submission each counsel shall submit either a challenge or a blank sheet of paper. Neither party shall make known the fact that the party has not challenged. Replacement jurors will then be examined for cause and, after passed, counsel will again submit simultaneously, and in writing, to the trial judge the name of any juror counsel elects to challenge peremptorily. This procedure will be followed until a full jury has been selected and accepted by counsel. Peremptory challenges may be directed to any member of the jury, and counsel shall not be limited to replacement jurors. Alternate jurors will be selected in the same manner. The trial judge will keep a list of those challenged and, if the same juror is challenged by both parties, each will be charged with a challenge. The trial judge shall not disclose to any juror the identity of the party challenging him.

It is the defendant's burden to prove prejudice in the selection of a jury. *State v. Coleman*, 865 S.W.2d 455, 458 (Tenn. 1993). Appellant argues that his ability to fully examine prospective jurors was hampered by the fact that some of these jurors were too distant for him to be able to fully gauge their expressions and reactions to questions. He submitted an affidavit in his motion for new trial in which he testified that he had measured the distance between the podium where he stood and the

4

second row behind the bar and estimated an average of 27 feet between him and the farthest prospective jurors. We do not find the defendant was prejudiced by the distance between the prospective jurors and the questioning attorneys. However, we do strongly recommend, as the Supreme Court did in *Coleman*, that the trial court follow the proper procedure for impanelling juries in the future to avoid prejudice to the judicial process. *See Coleman*, 865 S.W.2d at 458.

The defendant also argues that the trial court erred in denying a mistrial when witnesses gave testimony implying a continuing pattern of molestation despite the fact that the State was only prosecuting one occurrence. We find the incidents to which the defendant refers did not require the trial court to declare a mistrial. The decision to grant a mistrial is a matter of discretion for the trial court, *State v. McPherson*, 882 S.W.2d 365 (Tenn. Crim. App. 1994), which should be exercised with "the greatest caution" and only in "the most urgent circumstances." *State v. Witt*, 572 S.W.2d 913, 917 (Tenn. 1978)

The trial court properly provided curative instructions on the two occasions where witnesses offered spontaneous, nonresponsive testimony which suggested that there might have been previous sexual molestation of the victim by the defendant. These curative instructions were well-crafted so they would not highlight the objectionable testimony. We must assume that the jury followed the instructions of the trial court. *State v. Baker*, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987) (*citing State v. Lawson*, 695 S.W.2d 202, 204 (Tenn. Crim. App. 1985).

The defendant cites two other incidents which he argues required a mistrial. One was a question by the attorney general, who asked the victim whether the defendant had ever threatened her previously, to which the witness did not respond. Another incident was the victim's testimony on redirect that she and the defendant had serious problems. We do not find that this would suggest prior sexual batteries to the jury, and it is, in fact, very similar to testimony that the defendant elicited in his

5

cross-examination of the victim to demonstrate that the victim and the defendant did not get along well.

The defendant also argues that the trial court erred in allowing Ladawya Morgan Luna, Amy Bauer and Officer Charles Byrd to testify as to the fact and details of what Tanya told them about what happened the evening before. This testimony was allowed into evidence on the theory of fresh complaint, which has since been held not not to apply in cases where a child is the victim of sex abuse. *State v. Livingston*, 907 S.W.2d 392 (Tenn. 1995). The state argues that there was no prejudice to the defendant since the evidence was admissible as corroborative evidence of prior consistent statements.

The defendant argues that the prior consistent statement rule should not apply in this case, since the state first brought out the victim's inconsistent statement to Officer Byrd during its direct examination. However, the defendant clearly attacked the victim's credibility on cross-examination. Defense counsel asked her three times if she had lied to Officer Byrd and Ms. Young and then asked if she then told them "a new story." He attempted to show that the victim was mad at her step-father because of disagreements between him and her mother. He attempted to show that she was frequently in trouble for lying. He also tried to show that the events on that evening as the victim described them were unlikely, since it took place not far from where her mother was sleeping and because of the medical evidence. He asked whether she told her brother the truth when he came home that night.

The defendant was clearly attacking the victim's credibility and suggesting that she had fabricated her testimony because she was mad at the defendant. The testimony of Ladawya Morgan Luna and Amy Bauer is clearly admissible for corroboration of Tanya's testimony by statements consistent with her testimony made prior to her inconsistent statement. *See State v. Meeks*, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993) *cert. denied* 114 S. Ct. 1200 (1994). The trial judge

gave the jury a limiting instruction, explaining that their testimony as to the facts and details of what the victim told Ladawya Morgan and Amy Bauer was not evidence that what the victim said was true, but only evidence as to the victim's credibility. Officer Byrd testified that the victim told him that nothing had happened, that she was mad at the defendant. He did not testify as to anything else the victim told him. We find this statement did not prejudice the defendant.

Finally, the defendant objects to the sentence and fine imposed upon him as excessive. The range for a Range I offender for a Class B felony is eight to twelve years.

Review of the length, range or manner of service of a sentence is *de novo* on the record, accompanied by a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness only applies upon an affirmative showing that the trial court considered the relevant sentencing principles. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the defendant to show the impropriety of the sentence. T.C.A. § 40-35-401(d) Sentencing Commission Comments.

The presumptive sentence in a felony case is the minimum in each range unless the enhancement factors outweigh the mitigating factors. The court must start at the minimum sentence and enhance accordingly for the enhancement factors and reduce accordingly for the mitigating factors. T.C.A. § 40-35-210(c). The trial court in this case found three enhancement factors applied and gave some consideration to two mitigating factors.

The trial court applied as enhancing factors that defendant has a previous history of criminal convictions or criminal behavior, that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement and that the defendant abused a position of private trust.

The trial court improperly considered the fact that the offense was committed to gratify the defendant's desire for pleasure or excitement as an enhancing factor.

7

The offense of aggravated sexual battery requires as an element of the offense that the touching be for the purpose of sexual arousal or gratification and, therefore, this intent cannot also be used as an enhancing factor. *State v. Kissinger*, 922 S.W.2d 482, 486 (Tenn. 1996).

The state argues that the court could have applied the enhancement factor that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, because the presentence report indicates that the defendant was found in violation of his probation for an aggravated assault conviction. We agree that this factor applies.

The trial court considered the fact that defendant's prior convictions occurred at a young age as partial mitigation of the enhancement factor of a previous history of criminal convictions or criminal behavior. He also somewhat considered as a mitigating factor that the defendant had provided his family with necessities. We do not find this mitigating factor to be supported by any proof in the record. We agree with the attorney general's argument at sentencing that this mitigation factor is extremely inappropriate considering the victim of this offense was the defendant's step-daughter.

The defendant argues that the trial court erred in failing to consider that the defendant's conduct neither caused nor threatened serious bodily injury in mitigation of his sentence. The state argues that the trial court properly did not apply this factor because his attempts to penetrate the vagina of the victim, who had not fully passed through puberty, could have torn her hymenal membrane or caused other internal damage. The trial court stated that, if this factor did apply, "very, very little weight" could be accorded to it. We agree.

We find the balance of the applicable enhancement and mitigating factors is in favor of enhancement. The record supports the trial court's sentence of ten years' imprisonment.

The defendant also challenges his fine, which is reviewable under the same standard as a sentence of incarceration. *State v. Bryant*, 805 S.W.2d 762 (Tenn. 1991). The fine should be based on the factors to be considered in setting the sentence and upon the defendant's ability to pay the fine. *Bryant*, 805 S.W.2d at 766. Although the defendant is indigent, he committed a serious crime and his sentencing factors balance toward enhancement. We find that the fine is appropriate and not excessive.

We affirm the judgment of the trial court and, finding the defendant to be indigent, assess the costs of appeal to the State of Tennessee.

_____
John K. Byers, Senior Judge

CONCUR:


_____
Joseph M. Tipton, Judge



_____
Paul G. Summers, Judge

9

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1996 SESSION

FILED

**January 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE, )
                     )
     Appellee,     )    No. 03C01-9606-CC-00237
                     )
                     )    Rhea County
v.                   )
                     )    Honorable Thomas W. Graham, Judge
                     )
BILL SANDELL,      )    (Aggravated sexual battery)
                     )
     Appellant.     )

## CONCURRING OPINION

I concur in the majority opinion's results and most of its reasoning. However, I question the extent to which it appears to allow the victim's previous statements to others to be admitted into evidence to corroborate her testimony once her credibility was attacked. It is not every attack on credibility that allows for the use of prior statements.

Ordinarily, prior consistent statements of a witness are not admissible to bolster the witness' credibility. State v. Braggs, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980). Use of such statements has been viewed as cumbersome, a waste of time, confusing and unduly prejudicial. Without the prohibition, a party could use a parade of witnesses who heard the witness say something similar, resulting in the jury being influenced to decide the case on the repetitive nature of or the contents of the out-of-court statements rather than on the in-court, sworn testimony. See Curtis v. State, 167 Tenn. 430, 437, 70 S.W.2d 364, 366 (1934); Neil P. Cohen, et al., Tennessee Law of Evidence § 608.11, at 360 (3d ed. 1995). However, once the opponent of a witness

10

brings the issue of credibility to the forefront by attacking or impeaching that witness' testimony, through cross-examination or other evidence, we allow certain types of witness rehabilitation to occur through corroborative proof to rebut the attack. A key component for admissibility, though, is that the prior statement must be relevant to rebutting the attack.

In this case, as the majority opinion points out, the defendant sought to show that the victim was mad at him because of disagreements between him and her mother. The defendant's goal was to show that the victim had a motive to accuse him falsely. However, the record reflects that the defendant was attempting to show that the motive existed at the time of the initial accusation and carried forward through the trial. Under these circumstances, the prior consistent statements did not rebut this attack -- no statement was shown to have occurred before the motive to fabricate was implied to have risen. See, e.g., Sutton v. State, 155 Tenn. 200, 204, 291 S.W. 1069, 1070 (1927); Dietzel v. State, 132 Tenn. 47, 72, 177 S.W. 47, 53-54 (1915). In other words, the testimony and the prior statements would all have occurred with the motive to fabricate. Thus, the prior statements were not relevant to rebutting the claimed motive to lie. See State v. Kendricks, 891 S.W.2d 597, 603 (Tenn. 1994).

Similarly, the fact that the defendant tried to show that the victim frequently lied and tried to show that the assault did not occur because of its claimed proximity to her sleeping mother and because of the negative medical evidence does not allow for the use of the prior statements. In similar fashion to the motive to fabricate, the claim that the victim is a frequent liar is not rebutted by evidence that she has made a prior statement consistent with her trial testimony – evidence of chronic lying would affect the prior statement, as well. As far as the defendant's claim that the physical evidence did not support her testimony about an assault, the evidence of prior consistent statements would, again, have no relevance to rebutting such a claim.

11

General attacks upon a witness' credibility do not, by themselves, open the door for admission of prior consistent statements.

The pivotal points, though, relate to the evidence – presented by the state -- that the victim did not tell her brother and mother of the assault on the night it occurred and that the victim told Officer Byrd in her first statement to him that nothing had happened. Initially, I do not believe that the state should be allowed to justify presenting the victim's claimed prior consistent statements as corroboration of her testimony when the state, itself, presents the evidence that would give rise to a question of the victim's credibility. On the other hand, and as in this case, when defense counsel relies upon the evidence that attacks credibility, through cross-examination or otherwise, then the state may seek to corroborate the victim's testimony with relevant prior consistent statements.

As for the fact that the victim did not tell her brother and mother on the night of the assault, it brings into play the basic reasoning behind the fresh-complaint doctrine. That is, to the extent that the victim would be expected to complain immediately to others about the assault, her lack of complaint could support an inference that the assault did not happen. To rebut this negative inference, it would be relevant for the state to show that the defendant had threatened her if she told anyone and that the next day -- away from the defendant -- she told people at school that the defendant had raped her. However, disclosure of the details of the assault would not be necessary to rebut the negative inference.

As for the victim's first statement to Officer Byrd that nothing happened, it is a prior inconsistent statement relative to her trial testimony and the defendant relied upon that fact in cross-examining her. Therefore, the victim's statements at school are prior consistent statements relevant as corroboration to the victim's testimony, reflecting

12

what she said when the defendant was absent. Similarly, the victim's complaint of rape to Officer Byrd in her second statement when she was, again, away from the defendant is relevant for corroborating her testimony and for placing doubts on her prior claim that nothing happened. As before, though, I doubt that disclosure of the details of the assault would be necessary to rebut the negative inferences.

However, the few details of the offense that were disclosed by the witnesses to the victim's prior statements were elicited by the defendant's cross-examination. Thus, although the state inappropriately presented the victim's prior complaints in its direct examination of her, I do not believe that such evidence more probably than not affected the verdict to the defendant's detriment. See T.R.A.P. 36(b). Once the defendant cross-examined the victim as he did, the corroborating testimony elicited by the state from the other witnesses was appropriate. Therefore, I concur in affirming the judgment of conviction.

_____
Joseph M. Tipton, Judge