J^MICHAEL E. KIRBY, Judge.
On August 8, 1997, Raymond Bonnee was charged by bill of information with carnal knowledge of a juvenile, a felony in violation of La. R.S. 14:80. On August 13, 1997, Bonnee, through counsel, entered a plea of not guilty, and on September 11, 1997, the trial court made a finding of probable cause. On September 23, 1997, a hearing was held on a motion to suppress the alleged victim’s photographic identification of Bonnee, and the trial court granted the motion. On November 19, 1997, Bonnee was tried but the jury was unable to reach a verdict, and the trial court declared a mistrial. On December 17, 1997, Bonnee was again tried, the jury was unable to reach a verdict, and the trial court was again forced to declare a mistrial.
On January 21, 1998, Bonnee’s newly retained counsel appeared and requested that the matter be reset for trial. On March 26, 1998, a third trial was held, and the six-member jury found Bonnee guilty as charged of carnal knowledge of a juvenile. On April 9, 1998, Bonnee waived all legal delays and was sentenced on a multiple bill to eight years in prison, with credit for time served, concurrent with the sentence in case number 392-026. On August 26, 1998, the trial court ordered the Minute Clerk to correct the | ^minute entry to reflect that Bonnee’s sentences were to run concurrent with any parole revocation. On January 4, 2002, the trial court granted Bonnee an out of time appeal.
Bonnee was arrested for carnal knowledge of a fifteen-year-old girl, L.H., who had run away from home on two occasions. Officer Billiot, the investigating officer, noted in his police report that L.H. initially denied having any contact with Bonnee. On June 12, 1997, however, L.H. gave a taped statement at the child abuse division in which she claimed that she had sex with Bonnee, an adult, more than four times. Officer Billiot obtained a photograph of Bonnee from a criminal history file and presented it to L.H. who identified Bonnee as the person with whom she had engaged in sex. Officer Billiot verified Bonnee’s age as thirty and prepared an arrest warrant. *1189 L.H. also stated that she had sex twice with another adult male named Albert Simmons in Harvey, and officer Billiot alerted Jefferson Parish authorities. L.H. claimed that her father had grabbed her by the neck after she was returned to the custody of her parents, and Officer Billiot reported that allegation to Child Protection Services.
The record contains the trial transcript from Bonnee’s third trial only. At the third trial, Officer Billiott testified that after interviewing L.H., he “first obtained that photograph of Mr. Bonnee from a criminal history file and presented it to [L.H.] who identified him as the subject she had sex with on Harrison Avenue.” The State completed its direct examination of Officer Bil-liott, and at that point defense counsel asked for a bench conference, objected to the mention of a “criminal history file,” and motioned for a mistrial. Defense counsel argued that the reference indicated Bonnee had a prior criminal record, and any such reference is strictly prohibited unless Bonnee takes the witness stand. Defense counsel pointed out that “it’s not | atoo late for use to pick another jury and start again,” as the officer was the first witness to testify. The trial court denied the motion, finding it untimely.
L.H. testified at the third trial that she had sex with Bonnee three or four times, although she admitted on cross-examination that she had given inconsistent statements to the police regarding whether she had physical contact with Bonnee. Bonnee, according to L.H.’s testimony, initially believed she was eighteen years old based on the fake identification she had shown him. She could not recall whether she admitted to him that she was only fifteen years old before or after they had sex for the first time. L.H. testified, however, that she was certain Bonnee was aware of her true age the second time she ran away. The second time L.H. ran away, she stayed at the apartment of Lisa Briscoe and Rashonda Jones. At the time, Briscoe was dating Charles Thompson, Bonnee’s roommate. At the trial, Jones testified that she witnessed L.H. “sitting on [Bonnee’s] face” while wearing a skirt. She did not know whether L.H. had on underwear, but she presumed by their actions that she did not and that there was physical contact between them.
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

Bonnee alleges that his trial attorney rendered ineffective assistance of counsel for failure to move for dismissal of the prosecution under State v. Kyles, 97-2660 (La. App. 4 Cir. 1/21/98), 706 So.2d 611, prior to Bonnee’s third trial after his first two trials ended with deadlocked juries. As recently reiterated by the Louisiana Supreme Court, “[gjenerally, the preference for addressing claims of ineffective assistance of counsel is a post-conviction proceeding in the trial court, not on appeal. The rationale behind such procedure is that a full evidentiary hearing may be conducted to explore the issue.” State v. Watson, 00-1580, p. 4 (La.5/14/02), 817 So.2d 81, 84. |4[internal citations omitted] Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444, 448 (La.1983); State v. Holmes, 2000-1816, p. 6 (La.App. 4 Cir. 4/25/01), 787 So.2d 440, 444. On June 12, 2002, this Court denied the State’s motion to interrupt the briefing schedule and to supplement the record with two prior trial transcripts. The record alone, even if supplemented, would not be adequate to rule on the merits of this claim. It appears likely that testimony from defense counsel would be necessary to dispose of this claim. Accordingly, we decline to ad *1190 dress this issue, reserving to the defendant his right to raise this claim in an application for post-conviction relief.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, Bon-nee argues that the trial court made several errors resulting from the testimony of Officer Billiott that he obtained a photograph of Bonnee from a criminal history file and used it for identification purposes. At the conclusion of Officer Billiott’s testimony, the following exchange occurred, leading to a conference in chambers, out of the presence of the jury, between the, defense counsel, and prosecutor:
MR. BORDELON [PROSECUTOR]:
I tender [the witness] at this time, your Honor.
MR. LAWRENCE [DEFENSE COUNSEL]:
Your Honor, may we approach?
THE COURT:
Sure.
(The following was put on the record in chambers.)
|KTHE COURT:
What is the nature of your objection?
MR. LAWRENCE:
Your Honor, Deteet[ive][sic] Billiott just, in response to the question where he obtained the photograph, picture of Mr. Bonnee[,] he stated that the got it from the district files.
THE COURT:
Can you go back and tell us what he said about the picture.
(The court reporter complies with the Court’s request and reads the following testimony.)
THE COURT REPORTER:
“We first obtained the photograph of Mr. Bonnee from a criminal history file.”
MR. LAWRENCE:
I’m moving for a mistrial on that, your Honor.
MR. BORDELON:
First of all, your Honor, it’s not a timely objection. The witness has already testified to the fact. A timely objection would have been at that point. I’m still not clear on what the question was and what the response was.
THE COURT:
What was the question?
(The court reporter complies with the Court’s request and reads the following testimony.)
THE COURT REPORTER:
“QUESTION: Based on your interview with [L.H.] what did you do next?
ANSWER: I first obtained that photograph of Mr. Bonnee from a criminal history file and presented it to [L.H.] who identified it as the subject she had sex with on Harrison Avenue. QUESTION: What did you do after that?
ANSWER: I prepared a warrant for arrest for Mr. Bonnee and we put the warrant on file with N.C.I.C. Mr. Bon-nee later turned himself in.”
UMR. LAWRENCE:
The State is strictly prohibited from introducing anything that would indicate Mr. Bonnee has a prior offense unless he takes the witness stand. It’s no[t][sic] too late for us to pick another jury and start again. If we go through an entire trial the Court of Appeal would reverse this case because you introduced evidence.
I tried to avoid this by not having narrative testimony, but once you get a witness up there and he starts on a narrative all sorts of stuff, all sorts of *1191 answers, something’s going to come out.
MR. BORDELON:
I don’t think it’s a timely objection. It should have been objected to when the officer was testifying.
THE COURT:
I’m going to deny the motion for a mistrial. Let’s just keep going. It’s not a timely objection.
First, Bonnee argues that .the trial court erred in denying defense counsel’s motion for mistrial as untimely. In the instant case, defense counsel objected at the close of the officer’s direct testimony to the reference to Bonnee’s photograph coming from a “criminal history file.” In a case with a similarly timed objection to other crimes evidence, the Louisiana Supreme Court found the objection untimely because “[tjhere was no objection to the initial question or follow-up queries. The state completed its re-direct, [the witness] was told she could step down, and jurors were removed for the lunch break. It was only then that the defense moved for a mistrial.” State v. Broaden, 99-2124, pp. 16-17 (La.2/21/01), 780 So.2d 349, 361. We find no abuse of discretion in the trial court’s ruling that the objection was untimely.
Second, Bonnee argues that the trial court erred in failing to grant a mistrial under La. C.Cr.P. art. 771(2). Article 771 provides in pertinent part as follows:
|7In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * X
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
La. C.Cr.P. art. 771.
The standard to judge whether a trial court should grant a mistrial is whether the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of fair trial. State v. Johnson, 94-1172, p. 3 (La. App. 4 Cir.12/15/94), 648 So.2d 43, 44, citing State v. Smith, 433 So.2d 688, 696 (La.1983). A trial court has the discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to ensure a fair trial when there are no specific statutory grounds for a mandatory mistrial, and the trial court’s ruling will not be disturbed on review absent an abuse of discretion. State v. Lewis, 95-0412, p. 4 (La. App. 4 Cir. 9/28/95), 662 So.2d 77, 79.
In this case, the prosecutor asked “what did you do next” and the officer answered improvidently by referencing the source of the photograph used in the identification process as a “criminal history file.” That comment, although unfortunate, does not constitute the type of egregious reference to specific “other crimes” that would deprive the defendant of any reasonable 1 ^expectation of a fair trial. Therefore, the trial court did not err in denying the motion for mistrial.
Third, Bonnee argues that the trial court erred in failing to admonish the jury *1192 to disregard the police officer’s testimony that he obtained a photograph of Bonnee from a criminal history file. Pursuant to La. C.Cr.P. art. 771, admonishment is triggered only “upon the request of the defendant or the state.” La. C.Cr.P. art. 771; State v. Tribbet, 415 So.2d 182, 185 (La.1982). Neither the defendant nor the state made a request for an admonishment. Therefore, this assignment is without merit.
Assuming arguendo that a request under La. C.Cr.P. 771 had been made, an admonishment would not be necessary unless the remark constituted an unambiguous reference to another crime. State v. Dillion, 99-2175, p. 8 (La.App. 4 Cir. 9/6/00), 770 So.2d 13, 19, unit denied, 2000-2815 (La.9/14/01), 797 So.2d 50, citing State v. Hayes, 414 So.2d 717 (La.1982). The comment referenced no particular crime by Bonnee and referred only “a criminal history file,” not “Bonnee’s criminal history file.” The statement, while unfortunate, was ambiguous and did not mandate an admonishment. It was, in the words of the Louisiana Supreme Court “nothing more than an obscure reference to other crimes ... made without explanation or elaboration”, and an admonishment would have focused the jury’s attention on the other crimes issue. State v. Tribbet, 415 at 185. The trial court did not err in failing to admonish the jury, and this assignment is without merit.’
For the reasons stated above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.