**Ruth KAHREE, Genevieve Sprake, Jeanne Reid, Amy Warner, Helen Volinski, and Lucille Moran, on behalf of themselves and all persons similarly situated, Plaintiffs,**

v.

**WESTERN ELECTRIC COMPANY, a corporation organized under the laws of the State of New Jersey, Defendant.**

Civ. A. No. 76–2201.

United States District Court, D. New Jersey.

April 25, 1979.

---

Fox & Fox by David Fox, and Richard Greenstein, Newark, N.J., Jose Rivera, Brooklyn, N.Y., for plaintiffs.

Pitney, Hardin & Kipp by S. Joseph Fortunato, Morristown, N.J., Lawrence M. Joseph, New York City, for defendant.

### OPINION

STERN, District Judge.

In this class action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, six named plaintiffs seek to represent a class of female applicants, present employees and former employees of Western Electric's New Jersey plants.[1] In brief, they allege that Western discriminates against women by slotting them into low positions at hire, refusing to promote them and by underpaying them. The present posture of this case compels the Court to exercise its supervisory powers under Rule 23, Federal Rules of Civil Procedure, to protect against possible abuse of the class action device.

The complaint in this action was filed on November 16, 1976, and issue was joined on January 31, 1977. On October 11, 1978 when the case was reassigned to this Court, it came to our attention that plaintiffs had not sought class certification and, indeed, that little discovery had taken place during the two-year life of the case. The Court immediately called a conference to inquire into the status of this action. Counsel as-

sured the Court that it would more actively pursue the discovery aspects of the case.

In January 1979, however—over two years after the complaint was filed—counsel for the plaintiff, Fox and Fox, advised the Court of a conflict of interest which, in their opinion, precluded their further participation in this lawsuit. Fox and Fox averred that since prior to the institution of the instant action, they had been performing services for American Telephone and Telegraph, the parent company of Western Electric, as well as for other AT&T subsidiaries:

> I have been associated with Fox and Fox since March, 1975. . . . Since I have been associated with the firm I have been performing estate planning and related services for employees of American Telephone and Telegraph (AT&T), Bell Telephone Laboratories, Incorporated and, in one instance, The Pacific Telephone and Telegraph Company.

(Affidavit of Paul Rosenberg, ¶ 3). It was further averred that the firm had been unaware of the conflict until the time in which it so informed the Court:

> I was unaware of the fact that the Kahree case was pending in our office until the late Fall of 1978. When I had an opportunity to examine the facts and to discuss them with my partner, Martin S. Fox, we jointly came to the conclusion that there existed a potentially dangerous conflict of interest. We realized we were representing plaintiffs in a case against a defendant from whose parent we regularly received payment for services. It was clear to us that should this situation continue we could very well be subject to criticism by one or both of our clients.

(*Id.*, at ¶ 5).

On March 6, 1979, the Court held a conference in this matter. At that time, Fox and Fox advised the Court that it had found substitute counsel, Jose Rivera. However, counsel also informed the Court

---

1. Exclusive of Western's Kearny plant. The latter is the subject of a separate action, *Kyriazi v. Western Electric*, reported at 461 F.Supp. 894 (D.N.J.1978); 465 F.Supp. 1141 (D.N.J. 1979).

that as a prerequisite to consenting to the withdrawal of Fox and Fox, the named plaintiffs were exacting monies from it:

MR. FOX: Rivera is acceptable to the named clients. What has happened to us now . . . our clients want us to pay them money.

THE COURT: Your clients want you to pay them money?

MR. FOX: Yes.

THE COURT: Why? Have you taken money from them?

MR. FOX: Three hundred dollars, which of course, they can have.

THE COURT: They want more money from you?

MR. FOX: Much more, yes.

\* \* \* \* \* \*

THE COURT: Why?

MR. FOX: Well, I hesitate to crawl into their heads.

THE COURT: They must have given you a hint.

MR. FOX: Obviously they can see we're in a difficult position. The hint is, is the cost of discovery. Rivera has told them that there will be a cost of discovery and has asked them for a retainer.

THE COURT: How much did he ask for?

MR. FOX: $4500.

\* \* \* \* \* \*

THE COURT: They want you to pay it all?

MR. FOX: More.

THE COURT: Oh, they want more? This is using the class action as a triple-edged club, isn't it?

MR. FOX: I'm beginning to feel that way, your Honor. Yes.

\* \* \* \* \* \*

THE COURT: . . . This is a shocking business. . . . Your clients, present clients, or whatever they are, want you to pay money?

MR. FOX: Yes, Sir.

THE COURT: How much money?

MR. FOX: The original asking price was $7200. As of a day or two ago—yesterday. Yesterday they will settle for $6,000. . . .

THE COURT: $7200. Did they explain to you the basis of that? Was it divided up a certain amount for each one of them?

MR. FOX: Yes. It was six times twelve. The reduction to $6000 was on the basis that one of the five—one of the six may not be going forward with the case. So they offered us a reduction . . . to six thousand.

THE COURT: In other words, they geared it to how much money each one wanted?

MR. FOX: Wanted, supposedly, in fairness to what the case will cost them in the hands of counsel.

THE COURT: When they made that demand, had this lawyer already spoken to them about how money he wanted?

MR. FOX: When the indications were that he wanted the case and they wanted him, he asked to meet with them in our absence, and did. . . . And that was the meeting at which finances were discussed. Our information as to that meeting was based on reports from Mr. Rivera and the named plaintiffs.

THE COURT: Well, I think this thing is going wild.

(Tr. 3/6/79; 4–6, 16).

Upon notice to the named plaintiffs and to all counsel, the matter was listed for a hearing on April 2, 1979, as to whether the Court had authority to appoint new counsel and, if necessary, new class representatives. Extensive colloquy was held with Fox and Fox and with Mr. Rivera, both of whom conceded that this Court was authorized to appoint counsel. The named plaintiffs having voiced no objection to the appointment of counsel, the Court disqualified both Fox and Fox and Mr. Rivera from any further representation of the class, although it did permit Mr. Rivera to represent the named plaintiffs, who wanted and selected him. The Court then went on to itself appoint William B. McGuire, Esquire, as counsel for the class.

The Court's general power to supervise the course of class actions may be found in Rule 23 itself, which permits the court to make "appropriate orders" during the course of a class action to protect the class and to ensure orderly progress of the action.[2] While Rule 23 does not by its terms authorize the Court to appoint counsel for the class, the peculiar nature of the class action—whereby absent persons may be held conclusively bound by the resulting judgment—has been used to justify appointment of counsel in appropriate circumstances. Thus, in *Cullen v. New York State Civil Service Comm'n.*, 566 F.2d 846 (2nd Cir. 1977), the district court found that class counsel, a sole practitioner, could not adequately represent a class of some 22,000 because of his inexperience and lack of resources. The court went on to appoint in his stead a law school professor experienced in the area of civil rights. The Second Circuit, although it dismissed the appeal as interlocutory, appeared to approve the district court's action:

> Since absent class members are conclusively bound by the result of an action prosecuted by a party alleged to represent their interests, the court's selection of counsel for the absent class should be guided by the best interests of those members, not the entrepreneurial initiative of the named plaintiff's counsel. In making a class certification decision, a district court must frequently select as lead counsel for the class the attorney who will best serve the interests of its members. . . . Unless there are exceptional circumstances, not present here,

the exercise of discretion should be left untouched by the appellate court. . . . Moreover, appellants have not been deprived of their chosen counsel, for he still remains in the case. They have simply been prevented from imposing their choice on the absent class members.

566 F.2d at 849.

Similarly, in *Amos v. Board of School Directors of City of Milwaukee,* 408 F.Supp. 765 (E.D.Wis.), *aff'd sub. nom., Armstrong v. Brennan,* 539 F.2d 625 (7th Cir. 1976), the court appointed class counsel for Stage II of a discrimination action because of its apprehension that remaining counsel for the class, a sole practitioner, could not adequately prosecute the action.

> The Court is convinced that [the appointment of counsel] is fully consistent with the spirit of Rule 23 of the Federal Rules of Civil Procedure. Rule 23 imposes on the Court an obligation to proceed with flexibility and imagination in structuring the course of a class action. . . . At the same time, the Court has responsibilities as the guardian of the rights of the absentee class members, and to carry out those responsibilities is "vested [with] broad administrative, as well as adjudicate, power." *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 832 (3rd Cir. 1973) . . .

In certifying a class action, the Court not only confers upon absent persons the status of litigants, but in addition it creates an attorney-client relationship between those persons and a lawyer or group of lawyers. While in most instances lawyers designated as legal representatives

---

2. Rule 23(d), Federal Rules of Civil Procedure, provides in part:

> (d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the

opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

of the class are the retained counsel of the named representative parties, there appears to be no good reason why this should necessarily be so. The relationship between the representative parties and their lawyer or lawyers is one of private contract; the relationship between the representative parties and their lawyer or lawyers is one of private contract; the relationship between the class counsel and the members of the class, apart from the representative parties, is one of court creation. To hold that the Court is limited in its choice of class counsel to attorneys appearing for the representative parties—to assert, in effect, that the class will be represented by those attorneys or not at all—is to instill a controlling element of entrepreneurial initiative into the situation which may be contrary to the best interests of the class which the Court has a fiduciary obligation to protect.

\* \* \* \* \* \*

(*Id.*, at 774–75).[3]

Here it is incumbent upon the Court to appoint counsel. Since Fox and Fox urge their own disqualification on grounds of conflict of interest, it is clear that the Court cannot permit them to choose their successor.

Further, because the record suggests that the named plaintiffs may be motivated by self-interest in this case, the Court cannot permit them to bind the class to their choice of counsel. Accordingly, the Court finds that it is authorized—indeed obligated—to· itself appoint counsel. The named plaintiffs will still have counsel of their choice, while the class will have counsel independently selected and therefore free to take any action he may deem necessary to protect the interests of the class.

3. There is no reason why the lack of class certification here should preclude appointment of class counsel. *Cf., Geraghty v. United States Parole Commission,* 579 F.2d 238, 549–552 (3rd Cir. 1978), *cert. granted* —— U.S. ——, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979). It is clear

that the Court's obligation to protect the class does not depend upon certification, for the moment a class action is filed, absent class members may forego their own action in reliance upon the filing of a class action.