121 P.3d 172

**Janis VILLALPANDO,**
**Petitioner/Appellant,**

v.

**Michael REAGAN, Maricopa County Justice of the Peace, Scottsdale Precinct, Respondent/Appellee,**

**Mesa City Prosecutor's Office, Real Party In Interest/Appellee.**

**No. 1 CA–CV 04–0775.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 22, 2005.

Review Denied March 14, 2006.

Theron M. Hall, III, Phoenix, Neal W. Bassett, Phoenix, for Petitioner/Appellant.

John Pombier, Mesa City Prosecutor, Mesa, By W. Craig Jones, Assistant City Prosecutor, for Real Party In Interest/Appellee.

Arizona Prosecuting Attorneys Advisory Council, Phoenix, By Edwin M. Cook, Director, for Amicus Curiae APAAC.

The Phoenix City Prosecutor's Office, Phoenix, By Heidi E. Gilbert, Assistant City Prosecutor, for Amicus Curiae City of Phoenix.

## OPINION

EHRLICH, J.

¶ 1 The Maricopa County Justice Court, Scottsdale Precinct, denied the motion of Janis Villalpando for appointment of a special prosecutor for charges filed against her after her arrest for driving under the influence of alcohol ("DUI"). Villalpando then filed a special action in the Maricopa County Superior Court to challenge that ruling. The superior court accepted jurisdiction, but it denied Villalpando the relief she requested, and Villalpando appealed its decision to this court. We have jurisdiction pursuant to Arizona Revised Statutes §§ 12–120.21(A)(1)

(2003) and 12–2101(B) (2003). For the reasons that follow, we affirm the judgment of the superior court.

## *FACTS AND RELEVANT PROCEEDINGS*

¶ 2 Villalpando, who was at the time an attorney in the Scottsdale City Attorney's Office, was arrested in Scottsdale for DUI. Because of her employment, the Scottsdale City Court transferred Villalpando's case to the Maricopa County Justice Court, Scottsdale Precinct, a transfer not at issue. The Scottsdale City Prosecutor ("Scottsdale Prosecutor") made a limited appearance in the justice court to inform the court that, because Villalpando was a city employee, he would later "notify this Court of substitute counsel."

¶ 3 The Scottsdale Prosecutor indeed subsequently moved to withdraw as counsel due to his conflict of interest. In the motion, he advised the justice court that the Mesa City Prosecutor ("Mesa Prosecutor") was willing to assume responsibility for the case. Villalpando did not respond and therefore apparently did not oppose the motion. Accordingly, the justice of the peace signed an order of substitution.

[redacted] ¶ 4 Several months after the order of substitution was filed, however, Villalpando filed a motion in the justice court for appointment of a special prosecutor. She argued that, once the Scottsdale Prosecutor had called his conflict to the court's attention, his involvement in the case should have ceased. By taking the additional step of recommending a successor, she contended, the Scottsdale Prosecutor had perpetuated his conflict in violation of Villalpando's due-process rights under both the Arizona and United States Constitutions.[1]

¶ 5 The justice court denied Villalpando's motion. Villalpando then filed a special action in the superior court. The court accepted jurisdiction, but it found "no appearance of impropriety, no actual conflict, and no error in the action of the Scottsdale City Prosecutor's Office in referring the instant case to the Mesa City Prosecutor's Office for prosecution . . . ." Accordingly, it denied relief, and Villalpando appealed its judgment.[2]

## *DISCUSSION*

[redacted] ¶ 6 We review the judgment for an abuse of the superior court's discretion, which occurs if the court erred in its application of the law or when the record does not substantially support its decision. *Merlina v. Jejna,* 208 Ariz. 1, 3 ¶ 6, 90 P.3d 202, 204 (App.2004). A ruling on a motion to disqualify counsel is one within the court's discretion to make, "limited only by the applicable legal principles." *Smart Indus. Corp. Mfg. v. Superior Court (St.Germaine),* 179 Ariz. 141, 145, 876 P.2d 1176, 1180 (App.1994).

[redacted] ¶ 7 Villalpando does not contend that the Mesa Prosecutor has an independent conflict of interest that would disqualify him or his office, and she does not dispute the Mesa Prosecutor's declaration that he has never been under the "supervision, guidance, or control" of the Scottsdale Prosecutor. Villalpando's contention is that, once the Scottsdale Prosecutor had identified his conflict of interest, he was disqualified from making any further decisions related to her case without "perpetuating" that conflict. Thus, the sole issue is whether a conflict-barred prosecutor's nomination of substitute counsel violates a defendant's federal and state due-process rights to "fundamental fairness."[3]

1. "The Due Process Clause of the Arizona Constitution is construed similarly to the same clause in the United States Constitution." *State v. Kaiser,* 204 Ariz. 514, 516 n. 2 ¶ 1, 65 P.3d 463, 465 n. 2 (App.2003) (citations omitted), *cert. denied,* 540 U.S. 1162, 124 S.Ct. 1174, 157 L.Ed.2d 1207 (2004); *see also State v. Farley,* 199 Ariz. 542, 544–45 ¶ 12, 19 P.3d 1258, 1260–61 (App.2001).

2. The Phoenix City Prosecutor and the Arizona Prosecuting Attorneys Advisory Council ("APAAC") are *amici curiae.* Both appear in support of the Mesa City Prosecutor's Office.

3. A defendant has a right to "fundamental fairness" as a matter of both substantive and procedural due process. *See, e.g., United States v. Lilly,* 983 F.2d 300, 309 (1st Cir.1992) (A substantive due-process violation "occurs when government conduct violates 'fundamental fairness' and is 'shocking to the universal sense of justice.' ") (Quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 4

¶ 8 Without question, certain prosecutorial conflicts may implicate due-process concerns, *see, e.g., State v. Counterman,* 8 Ariz.App. 526, 529–30, 448 P.2d 96, 99–100 (1969), and a court does have the authority to disqualify a prosecutor or a prosecutor's office for a conflict of interest. *E.g., Turbin v. Superior Court,* 165 Ariz. 195, 199, 797 P.2d 734, 738 (App.1990).[4] A defendant does not state a claim for a violation of his due-process rights, however, unless the conflict is so severe as to deprive him of fundamental fairness in a manner "shocking to the universal sense of justice." *Oshrin v. Coulter,* 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984) (quoting *Crouch v. Justice of Peace Court,* 7 Ariz.App. 460, 466, 440 P.2d 1000, 1006 (1968)).

Because there is no bright-line rule for determining whether a conflict rises to the level of a due-process violation, each case must be analyzed on the facts peculiar to it. As the Supreme Court has explained:

> [D]ue process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise [that] must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dept. of Soc. Servs.,* 452 U.S. 18, 24–25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Thus, before we consider whether Villalpando's due-process rights were violated by the Scottsdale Prosecutor's nomination of the Mesa Prosecutor, we must consider the nature of the Scottsdale Prosecutor's conflict.

¶ 9 Because Villalpando did not object to the substitution of the Mesa Prosecutor when the motion for substitution was made, the justice court's approval of that substitution was in effect the appointment of a "special prosecutor." *See State v. Latigue,* 108 Ariz. 521, 523, 502 P.2d 1340, 1342 (1972) (After the disqualification of the Maricopa County Attorney's Office, it was "necessary that the County Attorney secure the appointment of a special prosecutor if he wishes to continue the prosecution of this case"). In this context, Villalpando's motion to appoint a special prosecutor was a motion to disqualify the Mesa Prosecutor, the special prosecutor already appointed, on the basis that he was infected with the Scottsdale Prosecutor's conflict of interest as the result of having been recommended by him.

¶ 10 The parties to a criminal action are the defendant and the State. *State v. Lamberton,* 183 Ariz. 47, 49–50, 899 P.2d 939, 941–42 (1995). In Villalpando's case, the Mesa Prosecutor became the State's counsel. The Arizona Supreme Court has cautioned that a party should not be allowed to interfere with her opponent's attorney-client relationship except "in extreme circumstances," thereby putting the burden on Villalpando to show sufficient reason why the Mesa Prosecutor should be disqualified. *Alexander v. Superior Court (State),* 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984). It also has advised to "view with suspicion" motions by opposing counsel to disqualify a party's attorney based upon his conflict of interest or appearance of impropriety. *Gomez v. Supe-*

L.Ed.2d 268 (1960)); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (The right to procedural due process "entitles a person to an impartial and disinterested tribunal in both civil and criminal cases," one that "preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done.'") (Quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 172, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)).

4. Villalpando calls attention to a court's authority to appoint a particular attorney to represent a criminal defendant. *State v. Torres,* 206 Ariz. 52, 55 n. 3 ¶ 11, 75 P.3d 142, 145 n. 3 (App.2003), *aff'd in part, rev'd in part,* 208 Ariz. 340, 93 P.3d 1056 (2004). The appointment of defense counsel in a criminal case implicates a defendant's constitutional right to counsel, a concern irrelevant to this case.

*rior Court,* 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986).[5]

¶ 11 Even so, a prosecutor's duty to avoid a conflict of interest is prime because his paramount duty is to the principle of "fairness." In other words, his interest is not so much to prevail as to ensure that "justice shall be done." *Pool v. Superior Court (State),* 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

> Public confidence in the criminal justice system is maintained by assuring that it operates in a fair and impartial manner. This confidence is eroded when a prosecutor has a conflict or personal interest in the criminal case which he is handling.

*Turbin,* 165 Ariz. at 198, 797 P.2d at 737 (citing *Latigue,* 108 Ariz. at 523, 502 P.2d at 1342). *See State v. Hughes,* 193 Ariz. 72, 80, 969 P.2d 1184, 1192 (1998) ("The prosecutor has an obligation to seek justice, not merely a conviction, and must refrain from using improper methods to obtain a conviction.") (citing, *inter alia, Pool,* 139 Ariz. at 103, 677 P.2d at 266); *State v. Rodriguez,* 192 Ariz. 58, 64 ¶ 33, 961 P.2d 1006, 1012 (1998) (A prosecutor's responsibilities extend "beyond the duty to convict defendants. Pursuant to its role of 'minister of justice,' the prosecution has a duty to see that defendants receive a fair trial.") (citing Ariz. R. Sup.Ct. 42, E.R. 3.8, cmt.[1] ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.")); *State v. Freader,* 144 Ariz. 224, 227, 696 P.2d 1373, 1376 (App.1985) (A prosecutor has special ethical duties.).

¶ 12 Any interest that is inconsistent with the prosecutor's duty to safeguard justice is a conflict that potentially could violate a defendant's right to fundamental fairness. For example, if a prosecutor has a financial stake in the outcome of a prosecution, the conflict between that interest and the duties of the public office clearly presents constitutional concerns. *See, e.g., Ganger v. Peyton,* 379 F.2d 709, 712–13 (4th Cir.1967), *cited in Counterman,* 8 Ariz.App. at 530, 448 P.2d at 99. Additionally, a prosecutor's potential access to or use of confidential information obtained through his prior representation of the defendant could undermine the fairness of the prosecution. *See, e.g., State ex rel. Romley v. Superior Court (Pearson),* 184 Ariz. 223, 908 P.2d 37 (App.1995); *State v. Rupp,* 120 Ariz. 490, 586 P.2d 1302 (App. 1978).

¶ 13 The record does not permit an evaluation of Villalpando's motives in seeking the disqualification of the Mesa Prosecutor. The only harm that she has postulated from the substitution of prosecutors is the following from her opening brief:

> Lower court prosecutors (*the* city prosecutors, not their assistant prosecutors) are aware of each other's prosecutorial philosophies and practices. There are vast differences between the policies of the many valley city prosecutors. Scottsdale may very well have chosen the Mesa prosecutor's office because there is an understanding between the two head prosecutors on how conflict cases, or drunk driving cases, should be handled. So, a prosecutor forced to withdraw from a case may still exert a strong influence over its outcome by assigning it to a particular city prosecutor's office.

¶ 14 There are several difficulties with Villalpando's argument, not the least of which is the lack of any factual support. Indeed, her suggestion that the Scottsdale Prosecutor recommended the Mesa Prosecutor to the justice court for some nefarious purpose is entirely speculative. Additionally, she fails to identify any conflict on the part of either the Scottsdale Prosecutor or the Mesa Prosecutor, arguing only that the former's nomina-

---

5. The Arizona Supreme Court developed factors to consider when a court is faced with a motion to disqualify opposing counsel: (1) whether the motion is being made for the purposes of harassment; (2) whether the moving party will be damaged if the motion is denied; (3) whether there is an alternative solution or whether the proposed solution is the least damaging possible under the circumstances and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation. *Alexander,* 141 Ariz. at 165, 685 P.2d at 1317.

tion of the latter as his successor gives rise to a constitutionally infirm "appearance of impropriety."

¶ 15 The concern with an attorney's appearance of impropriety stems from the American Bar Association's former Model Code of Professional Responsibility Canon 9 and continues as part of an analysis of counsel's conflict of interest. *State ex rel. Romley v. Superior Court (Flores)*, 181 Ariz. 378, 383, 891 P.2d 246, 251 (App.1995) (quoting *Gomez*, 149 Ariz. at 225, 717 P.2d at 904). In *Flores*, the trial court disqualified the Maricopa County Attorney's Office based on an "appearance of impropriety." *Id.* at 379–80, 891 P.2d at 247–48. Although this court reversed on appeal, we held that the appearance of prosecutorial impropriety should be avoided in order to maintain the public's confidence in the administration of justice. *See id.* (When "dealing with 'appearance,' both to the public as well as to individual defendants, trial courts must carefully scrutinize any case with, for example, a high public profile or strong political overtones."). This concern is consistent with "the ultimate goal" for any prosecution, which "is to maintain both public and individual confidence in the integrity of our judicial system." *Pearson*, 184 Ariz. at 229, 908 P.2d at 43.

¶ 16 Nonetheless, the mere "appearance of impropriety" rarely is sufficient to constitute a constitutional violation. In *Counterman*, for example, the defendant challenged a city's prosecution of him on charges related to domestic violence because one of the assistant city attorneys, uninvolved in that criminal prosecution, had represented the defendant's former wife in their divorce proceedings. 8 Ariz.App. at 529, 448 P.2d at 99. On review, this court concluded that "the mere representation of the defendant's former wife by an Assistant City Attorney did not present an actual conflict of interest in relation to the State's responsibility in seeing that justice was done in prosecuting the defendant." *Id.* at 530, 448 P.2d at 100. Ultimately, this court affirmed Counterman's conviction, concluding that "no conflict of interest ... [had] depriv[ed] the defendant of the fundamental fairness" ensured by the Due Process Clauses. *Id.*

¶ 17 *Counterman* demonstrates that a defendant's right to fundamental fairness is not violated whenever the slightest "appearance of impropriety" can be insinuated. Certainly, the mere suggestion of impropriety is "too slender a reed" to warrant the disqualification of an entire prosecutorial office. *Flores*, 181 Ariz. at 383, 891 P.2d at 251 (citing *Sellers v. Superior Court (Dunlap)*, 154 Ariz. 281, 289, 742 P.2d 292, 300 (App.1987)). Thus, a court should not impute an "appearance conflict" based solely on an employment relationship to a fully distinct and independent prosecutorial office. In fact, the only cases in which a court has upheld the "perpetuation" of an "apparent conflict" have involved either the threat of an improper use of confidential information or a judicial officer's control over a matter after recusal. *See, e.g., Fields–D'Arpino v. Rest. Assoc., Inc.*, 39 F.Supp.2d 412, 417 (S.D.N.Y.1999) (holding that a conflict was "perpetuated" due to inadequate screening procedures).

¶ 18 In this case, the Scottsdale Prosecutor sought to avoid any appearance of impropriety by asking an independent prosecutorial office to pursue the charges against Villalpando, thereby mitigating claims that Villalpando, as an employee of the City of Scottsdale, would receive preferential treatment. *See, e.g., Kennedy v. L.D.*, 430 N.W.2d 833, 837 (Minn.1988) ("It is improper for prosecutors to participate in cases which involve personal friends or relatives ... [or in which] the defendant is a current or former employee of the prosecutor's office ...."). Because the Scottsdale Prosecutor's conflict was based entirely on Villalpando's employment, his procurement of an order permitting his withdrawal was sufficient to defeat any "appearance of impropriety."

¶ 19 Villalpando's claim that the Mesa Prosecutor might violate her rights to "fundamental fairness" is based solely on speculation. Without any evidence, and Villalpando concedes that she has none, we will "assume that [a] prosecutor [is] acting in good faith." *State v. Boozer*, 80 Ariz. 8, 12, 291 P.2d 786, 788 (1955). We "will not presume that the prosecutor will seek defendants' convictions at all costs ...." *Flores*, 181 Ariz. at 382, 891 P.2d at 250. *See also State v. Schumacher*,

97 Ariz. 354, 357, 400 P.2d 584, 586 (1965) (Mere conjecture " 'certainly cannot amount to the deprivation of a constitutional right.' ") (Quoting *United States ex rel. Cooper v. Reincke*, 333 F.2d 608, 613 (2d Cir.1964)). We therefore decline Villalpando's invitation to assume that the Scottsdale Prosecutor would knowingly nominate substitute counsel who would disregard his ethical duties and, in Villalpando's words, "put [her] through the wringer, instead of reviewing the facts of the crime and [her] circumstances before decision [sic] how to charge the case or what plea agreement to offer."[6] The record contains no evidence of any such conduct or practice.

¶ 20 We further conclude that to establish by this court's fiat a system of judicial oversight, such as the one suggested by Villalpando,[7] would constitute an inappropriate interference by the judicial branch with the broad discretion entrusted to the executive branch. A prosecutor "is properly vested with both the power to charge ... and the discretion to proceed to trial once a criminal action has been filed." *State v. Ramsey*, 171 Ariz. 409, 413, 831 P.2d 408, 412 (App.1992). A court does not have the authority to interfere with the prosecutor's exercise of his discretion "unless he is acting illegally or in excess of his powers." *State v. Murphy*, 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976). *Accord State v. Superior Court (Wing)*, 180 Ariz. 384, 387, 884 P.2d 270, 273 (App.1994).

¶ 21 It appears that the method for arranging for a new prosecutor when a conflict arises is established by the respective city prosecutor's offices, who make informal, reciprocal agreements with other city prosecutor's offices for assistance, subject to judicial approval of the substitution. As long as the prosecuting agency selected is not independently subject to disqualification and the disqualified prosecutor or prosecutor's office refrains from further participation, we see no reason to interfere with this exercise of discretion. In other words, the recommendation to the court of who shall pursue a prosecution is left to the prosecutor's broad discretion, a discretion with which a court should not interfere absent extraordinary circumstances.

¶ 22 Villalpando has failed to meet the burden of establishing that the Scottsdale Prosecutor acted illegally or exceeded his powers by arranging for a substitute prosecutorial agency. His recommendation was subject both to approval by the court and to attack by Villalpando for any of the bases upon which a prosecutor may be disqualified for a cause personal to that prosecutor or his agency.[8]

6. Villalpando posits two scenarios that she insists illustrate how the Scottsdale Prosecutor's nomination of the Mesa Prosecutor as his successor would culminate in a violation of her due-process rights. In the first of these hypothetical examples, the Mesa Prosecutor would give Villalpando a "lenient" plea, thus prompting suspicion that the Mesa Prosecutor was selected to make the Scottsdale Prosecutor's friend's "problems" "disappear." In the second hypothetical example, the Scottsdale Prosecutor selects the Mesa Prosecutor because he either knows of or actually requests strenuous prosecution by the Mesa Prosecutor with no leniency and no reduced charge by plea agreement for Villalpando. The motive supposedly would be to have Villalpando removed from her position as a City of Scottsdale civil attorney, thereby creating a vacancy for the Scottsdale Prosecutor who wishes to change positions.

To accept either of these scenarios without a shred of evidentiary support would require us to assume a deliberate breach of the duties and obligations of each of these prosecutors toward the justice system, a conclusion we are unwilling to draw. *See State v. Noriega*, 142 Ariz. 474, 486, 690 P.2d 775, 787 (1984) (A prosecutor's refusal to plea bargain due to a personal dislike of the accused's counsel is conduct prejudicial to the administration of justice which could, under appropriate facts, warrant discipline.), *overruled on other grounds, State v. Burge*, 167 Ariz. 25, 804 P.2d 754 (1990). Moreover, Villalpando's suggestion that she would receive favorable treatment under the first scenario could not be considered a violation of her due-process rights, because she would be receiving a benefit rather than suffering a harm.

7. Villalpando maintains that the Scottsdale Prosecutor should have submitted to the justice court a list of four different prosecuting agencies willing to take the case from which list the court would have chosen, perhaps by random selection.

8. Villalpando argues that the justice court's decision agreeing to the substitution of prosecutors was meaningless because it was done "without constitutional analysis." We disagree. First, Villalpando did not at the time oppose the substitution of the Mesa Prosecutor for the Scottsdale Prosecutor. Second, the substitution was pre-

¶ 23 Although not factually similar, we regard *Rupp*, 120 Ariz. 490, 586 P.2d 1302, as sufficiently analogous to support our analysis. In *Rupp*, the Maricopa County Attorney's Office was disqualified after Rupp's defense attorney became the Maricopa County Attorney. A member of the Coconino County Attorney's Office, Gerald Till, was named as special prosecutor. Till arranged for a Deputy Maricopa County Attorney to represent the State during a calendar call, and Till and this deputy also discussed judges whom they would strike. When the assigned judge was identified, the deputy advised the court at Till's instruction that the State would exercise its privilege of striking the assigned judge from hearing the case. *Id.* at 496, 586 P.2d at 1307. Rupp then unsuccessfully moved to disqualify Till. The ruling was challenged on appeal, and this court held:

> The question of disqualifying Till called for a balancing of the effects of the previous objectionable conduct and the possibility of further similar involvement against the delay involved in finding and bringing another special prosecutor into the case. We believe that under all of the circumstances presented there was a reasonable basis for the trial court's refusal to order a second change of prosecutor. We accordingly find no error and no prejudice to the appellants by the court's action.

*Id.* at 495–96, 586 P.2d at 1307–08 (citations omitted).

■ ¶ 24 The opinion in *Rupp* stands for the proposition that not every contact between a conflicted prosecutor's office and a special prosecutor warrants disqualification of the special prosecutor. The facts of this case are more benign from Villalpando's perspective than those of *Rupp* because, apart from a request to act as special prosecutor, there is no evidence of any contact between the Scottsdale Prosecutor and the Mesa Prosecutor relating to Villalpando's case.

¶ 25 APAAC maintains that Villalpando's argument is similar to that rejected in *State v. Eastlack*, 180 Ariz. 243, 883 P.2d 999 (1994). In *Eastlack*, the defendant successfully moved to disqualify a judge and then contended that the presiding judge, who made a reassignment to another judge, was himself biased and should not have been allowed to make the reassignment. In rejecting this argument, the supreme court noted that the reassignment judge had made no substantive rulings involving the merits of the case but had simply performed "the mere preliminary function" of assigning the case to an impartial tribunal. *Id.* at 254, 883 P.2d at 1010. The court also held that there was no legal basis for a random selection of judges and that the defendant had cited no authority requiring a superior court to do so. *Id.*[9]

¶ 26 Villalpando attempts to distinguish *Eastlack* because the case involved a change of judge and not a change of prosecutor. The distinction is one that weakens Villalpando's argument, however. As the United States Supreme Court has made clear, "prosecutors may not necessarily be held to as stringent a standard of disinterest as judges" because, in our adversarial system, "[prosecutors] are necessarily permitted to be zealous in their enforcement of the law." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (quoting *Marshall*, 446 U.S. at 248, 100 S.Ct. 1610). The Court has not therefore found the same constitutional threat in prosecutorial conflicts of interest as might be constitutionally "intolerable" if experienced by a judge. *Id.* (citing *Marshall*, 446 U.S. at 250–52, 100 S.Ct. 1610).[10] *See*

---

sumptively legitimate unless or until the court was presented with a valid reason for not accepting the recommendation. Third, she now has been able to assert her constitutional arguments.

9. The opinion in *Eastlack* was based upon the court's earlier decision in *State v. Watkins*, 125 Ariz. 570, 611 P.2d 923 (1980), in which the court rejected the argument that a disqualified presiding judge was also disqualified from reassigning the case. "Appellant alleges it was improper, or at least displayed an appearance of

impropriety, to permit a judge who has been dismissed for cause to subsequently appoint the judge ultimately presiding at sentencing. Appellant, however, cites no authority for this novel proposition, nor do we choose to adopt such a rule." *Id.* at 575, 611 P.2d at 928.

10. We do not mean to ignore the principle that a prosecutor owes certain duties of fairness to the judicial system similar to those of a judge. *See State v. Polan*, 78 Ariz. 253, 261, 278 P.2d 432, 438 (1954) (A prosecutor acts in a semi-judicial

*also Dick v. Scroggy*, 882 F.2d 192, 199 (6th Cir.1989) (Celebrezze, J., concurring) (Merely the "appearance" of prosecutorial impropriety "is insufficient" to violate a defendant's due-process right to "fundamental fairness."). Thus, if a conflicted judge may reassign a case to another judge without violating a litigant's due-process rights, a conflicted prosecutor may suggest a substitute prosecutor for judicial approval.

¶ 27 Villalpando argues next that Arizona should adopt a formal method for the substitution of conflicted prosecutors to bring Arizona in line with the majority of other jurisdictions. She claims that twenty-six states have statutory systems for conflict substitutions. Although she asserts that only New Mexico allows a prosecutor with a conflict to choose a successor, she does not account for the remaining states. Furthermore, the existence of statutory systems elsewhere does not establish that informal systems are improper, and none of the case law from other jurisdictions cited by Villalpando supports such a conclusion.

¶ 28 The case of *Commonwealth v. Breighner*, 453 Pa.Super. 477, 684 A.2d 143 (1996), is distinguishable. In *Breighner*, the Adams County District Attorney who initiated a criminal prosecution disqualified himself due to a conflict of interest that subsequently developed, and designated the Cumberland County District Attorney to take over the prosecution. *Id.* at 145. The Cumberland County District Attorney then was appointed an assistant district attorney to the Adams County District Attorney's office for the purpose of conferring jurisdiction upon him, thus giving rise to some unavoidable supervision, guidance and control on the part of the conflicted prosecutor. *Id.* at 147. In contrast, as Villalpando concedes, the Scottsdale Prosecutor exercised no such control over the Mesa Prosecutor after the substitution.

capacity and is required to follow principle alone, without bias or prejudice.). Nevertheless, a prosecutor remains an advocate and the defendant's adversary.

11. Villalpando notes that this court has cited *Hartgraves* with approval. *See Corbin v. Broadman*, 6 Ariz.App. 436, 433 P.2d 289 (1967).

¶ 29 The case of *Kahree v. Western Electric Co.*, 82 F.R.D. 196 (D.N.J.1979), does not involve a criminal prosecution but, rather, the court's general power to supervise the course of class actions. The district court refused to permit disqualified counsel in a class action to choose their successors. Class members would be conclusively bound by the result of the action prosecuted by the class representative, and the court's selection of counsel for the class had to be guided by the best interests of those members and "not the entrepreneurial initiative" of the named plaintiff's counsel. *Id.* at 199.

¶ 30 The court in *Hartgraves v. State*, 5 Okla.Crim. 266, 114 P. 343 (1911), held that a prosecutor who had been disqualified could not designate an attorney who was privately employed by the prosecuting witness to represent the State in presenting the case to the grand jury. Under an Oklahoma statute, no one was permitted to be present during grand jury sessions except witnesses and officers duly authorized by law. "A county attorney has no right to turn a defendant over to his enemies, after having first armed them with the entire power of the state to be used as they see fit in his prosecution." *Id.* at 346.

¶ 31 Villalpando cites the following passage from *Hartgraves:* "We desire to say in addition that the county attorney, being disqualified in this case, was without power or authority to appoint any one to represent him." *Id.* Applying that quotation to this case is misleading because the holding is based on an older Oklahoman statute that has since been amended. The former statute required the trial court to appoint a replacement for a county attorney. *See id.* (citing Snyder's Comp. Laws of Okla.1909, § 1598). However, the statute now vests such power in either an assistant county attorney or the Oklahoma Attorney General. *See* 19 Okla. Stat. Ann. § 215.9 (2000). Thus, the *Hartgraves* opinion does not aid our analysis of this matter.[11]

However, this court cited *Hartgraves* in *Corbin* for general propositions related to the safeguards of the grand-jury process, *see id.* at 444, 433 P.2d at 296, not for any notion regarding the process to secure the appointments of successor prosecutors.

**314**

¶ 32 In *Williams v. Ellis,* 184 Ind. 307, 112 N.E. 98 (1916), the court held that a statute that allowed the circuit court to appoint a special prosecutor if the elected prosecutor was absent from the circuit also permitted the court to appoint a special prosecutor when the prosecutor was disqualified due to a conflict of interest. *Id.* at 102. Villalpando cites this case for the notion that a district attorney does not have the authority to appoint a special prosecutor, but the holding is not so broad. In *Ellis,* the court rejected the relator's argument that a trial court could play no role in the selection of a special prosecutor for a prosecutor who had suffered a conflict. *Id.* at 102–03. The court refuted the notion, advanced by the relator, that the office must remain fallow because the prosecutor had a conflict that precluded him from naming a replacement. *Id.* at 103.

¶ 33 Like the Indiana court, we fully expect and require our trial courts to review the nomination of a substitute prosecutorial agency, *see, e.g., Latigue,* 108 Ariz. at 523, 502 P.2d at 1342, as was done by the justice court without objection from Villalpando. We will not limit the trial court's independent authority and obligation to ensure that a prosecutorial conflict is cured by the new appointment. *See id.; cf. Torres,* 206 Ariz. at 55 n. 3 ¶ 11, 75 P.3d at 145 n. 3 (noting court's inherent authority to ensure defendant's Sixth Amendment right to counsel is protected). We simply hold that when a prosecutor's conflict is merely due to the defendant's employment by the same office or other such appearance-based conflicts, the prosecutor does not "perpetuate" the conflict by nominating a successor office to the court, nor does the court violate the defendant's due-process rights by appointing that nominee.

*CONCLUSION*

¶ 34 The judgment of the superior court upholding the decision of the justice court is affirmed.

CONCURRING: BARKER, P.J. and PORTLEY, J.

