IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 28 2009

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,              )
                                  )
                      Appellee,   )        2 CA-CR 2008-0100
                                  )        DEPARTMENT B
            v.                    )
                                  )        O P I N I O N
JOSHUA PAUL EUGENE HUFFMAN,        )
                                  )
                     Appellant.   )
                                  )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20060481

Honorable Richard S. Fields, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and David A. Sullivan                                Tucson
                                                          Attorneys for Appellee


Harriette P. Levitt                                                       Tucson
                                                           Attorney for Appellant


V Á S Q U E Z, Judge.

¶1 After two previous trials had ended in hung juries, a third jury found appellant Joshua Huffman guilty of sexual conduct with a minor under fifteen years of age, two counts of aggravated assault of a minor under fifteen years of age, and two counts of kidnapping, all dangerous crimes against children, and two counts of armed robbery. The trial court sentenced him to consecutive, enhanced, presumptive prison terms totaling eighty-eight years. Before trial, Huffman had moved to dismiss the charges on the ground that a third trial would violate his double jeopardy and due process rights under the United States and Arizona Constitutions. In this appeal, Huffman challenges the court's denial of that motion. For the reasons discussed below, we affirm.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to upholding the jury's verdicts. *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). On January 22, 2006, J. and C., both minors, were walking in the Rillito Wash when two men approached and introduced themselves as Josh and Obi. After engaging J. and C. in conversation and inviting them to smoke marijuana, the men ordered them at gunpoint into one of the wash's drainage tunnels where they took C.'s purse and J.'s watch, knife, and lighter. Obi then pointed a gun at J. while Josh forced C. to perform oral sex on him. Obi and Josh switched places, and, while Obi forced C. to perform oral sex on him, Josh searched J.'s pockets. Afterward, the men told J. and C. to walk farther into the tunnel and count to at least five thousand before coming out. J. and C. continued walking until they eventually came to a manhole and climbed out.

2

¶3         J. and C. told their parents what had happened, and their parents called the police. J. informed a police officer that he had recognized one of the men as one of the "Cactus Killers," a group of men who had vandalized saguaro cacti in the area. A detective then compiled photographic lineups that included photographs of "persons of interest" in the Cactus Killers case, and J. identified Huffman as one of the assailants. During a subsequent search of Huffman's bedroom, police discovered some of J.'s and C.'s property, and Huffman was then arrested.

¶4         Huffman's first two trials ended in mistrials when neither jury could reach a verdict. Before his third trial, he filed a motion to dismiss the indictment, arguing an additional trial would violate his rights under the Double Jeopardy Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution as well as the analogous provisions in the Arizona Constitution. The trial court denied the motion, and the jury found Huffman guilty of all charges. The court sentenced him as noted above, and this appeal followed.

**Discussion**

**I.     Double Jeopardy**

¶5         Huffman asserts that "constitutional principles against double jeopardy barred a third trial in this case."[1] He acknowledges that, "[n]ormally, a retrial after a hung jury does

---

[1]To the extent Huffman invokes the Arizona Constitution, he makes no separate argument that its protections differ from those of the federal constitution. We therefore confine our analysis to the federal constitutional provisions at issue. *See State v. Nunez*, 167 Ariz. 272, 274 n.2, 806 P.2d 861, 863 n.2 (1991).

not violate the double jeopardy clause." But, he contends, under the circumstances of this case, "[b]y forcing [him] to defend himself in a third trial, the [trial] court denied [his] constitutional rights to due process as guaranteed by the double jeopardy clause to the U.S. and Arizona constitutions." He argues the court therefore "should [have] exercise[d] its authority to dismiss [the] case." We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *State v. Chavez*, 208 Ariz. 606, ¶ 2, 96 P.3d 1093, 1094 (App. 2004).

¶6        "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant against multiple punishments or repeated prosecutions for the same offense and is applicable to the states through the Fourteenth Amendment." *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986). But, as Huffman concedes, double jeopardy protections do not prohibit a subsequent prosecution after a mistrial due to a hung jury. *See Lemke v. Rayes*, 213 Ariz. 232, ¶ 19, 141 P.3d 407, 414 (App. 2006); *see also Richardson v. United States*, 468 U.S. 317, 323-24 (1984). When a jury is deadlocked, a "trial court properly exercise[s] its sound discretion in declaring a mistrial. 'Under such circumstances jeopardy does not [terminate] and there is no limit to the number of trials but the discretion of the court.'" *State v. Marks*, 113 Ariz. 71, 73, 546 P.2d 807, 809 (1976), *quoting State v. Woodring*, 95 Ariz. 84, 85-86, 386 P.2d 851, 852 (1963).

¶7        Huffman nevertheless relies on a number of cases he contends support dismissal under the circumstances of this case. *See State v. Moriwake*, 647 P.2d 705, 712-13 (Haw. 1982); *State v. Abbati*, 493 A.2d 513, 517 (N. J. 1985); *State v. Witt*, 572 S.W.2d 913,

917 (Tenn. 1978); *State v. Sauve*, 666 A.2d 1164, 1164, 1169 (Vt. 1995).[2] But, to the extent he argues these cases stand for the proposition that the Double Jeopardy Clause, standing alone, prohibits retrial after successive hung juries based on fundamental fairness or due process grounds, he is mistaken. In each of the cited cases, the reviewing courts specifically rejected any claim by the defendant that the Double Jeopardy Clause prohibited retrial, and they examined fundamental fairness as an analytically distinct issue. *Moriwake*, 647 P.2d at 711-12; *Abbati*, 493 A.2d at 517; *Witt*, 572 S.W.2d at 916-17; *Sauve*, 666 A.2d at 1167-68, 1170 n.3. We therefore reject Huffman's claim that the trial court erred in denying his motion to dismiss on double jeopardy grounds.

## II.    Due Process

¶8       In addition to his double jeopardy claim, Huffman raises a separate claim that he "was denied his constitutional right[] to due process by virtue of the [trial] court's denial of his motion to dismiss." He contends a third trial subjected him to "[t]he anxiety, embarrassment and expense [of] . . . continued criminal reprosecution . . . where no new evidence exist[ed]" and thus was improper. In support of his argument, Huffman draws on the out-of-state cases noted above and urges this court to adopt their reasoning and hold that, in the interests of justice, fundamental fairness permits a trial court to dismiss charges after

---

[2]Huffman also cites *People v. Thompson*, 379 N.W.2d 49, 55 (Mich. 1985), in which the court acknowledged "there may be cases in which repeated retrials after repeated jury deadlock might be so fundamentally unfair as to violate . . . due process." However, *Thompson* has been called into question, if not specifically overruled, by a later case, *People v. Sierb*, 581 N.W.2d 219, 225 (Mich. 1998), in which the Michigan Supreme Court concluded that retrial could not violate due process unless it also violated double jeopardy.

multiple hung juries have resulted in mistrials. *See Moriwake*, 647 P.2d at 712-13 (trial court has inherent authority to dismiss indictment, following mistrials caused by hung juries, after balancing interests of state against fairness to defendant and orderly functioning of court); *Abbati*, 493 A.2d at 517 (court's inherent authority to dismiss after mistrials caused by hung juries derived from precepts of fundamental fairness and judiciary's responsibility for efficient administration of criminal justice system and ability to fashion equitable remedies); *Witt*, 572 S.W.2d at 917 (courts have inherent authority to dismiss where "probability of continued hung juries is great"); *Sauve*, 666 A.2d at 1169 (repeated prosecution following hung juries "raises issues concerning traditional notions of fundamental fairness and substantial justice").

¶9            Our courts have not addressed whether a successive prosecution that does not violate double jeopardy principles may still violate a defendant's due process rights. Other jurisdictions treat double jeopardy and due process considerations separately and, regarding the latter, permit trial courts to consider a wide variety of factors in determining whether, in the interests of justice, a successive prosecution may go forward. *See, e.g.*, *United States v. Ingram*, 412 F. Supp. 384, 385-86 (D.D.C. 1976); *Ex parte Anderson*, 457 So. 2d 446, 450-51 (Ala. 1984); *Moriwake*, 647 P.2d at 712-13; *Abbati*, 493 A.2d at 517; *State v. Gonzales*, 49 P.3d 681, 685-86 (N.M. App. 2002); *Witt*, 572 S.W.2d at 917; *Sauve*, 666 A.2d at 1164, 1169.

¶10           Although not cited by either party, Rule 16.6, Ariz. R. Crim. P., is instructive on this issue. Rule 16 governs pretrial motion practice generally, and Rule 16.6 governs

6

dismissals of prosecutions in particular. Subsection (b) of the rule permits dismissal on a defendant's motion "upon finding that the indictment, information, or complaint is insufficient as a matter of law," but the comment to that rule notes that dismissal can be based on any legally recognized ground.[3] Furthermore, although not explicitly stated in the rule, a trial court also has authority to dismiss a prosecution *sua sponte*, even absent a motion by either party. *See State v. Hannah*, 118 Ariz. 610, 611, 578 P.2d 1039, 1040 (App. 1978). Rule 16.6(d), however, applies broadly to all dismissals and provides, in pertinent part: "Dismissal of a prosecution shall be without prejudice to commencement of another prosecution, unless the court order finds that the interests of justice require that the dismissal be with prejudice." Thus, although "[t]he trial court has the inherent power to dismiss a prosecution," it may not dismiss an indictment with prejudice absent a finding that "the interests of justice" require it. *Hannah*, 118 Ariz. at 611, 578 P.2d at 1040.

¶11 We have found no Arizona cases interpreting the meaning of "the interests of justice" under circumstances analogous to those in this case. The majority of the cases that have analyzed Rule 16.6(d) have done so in the context of speedy trial violations. In that area, courts have concluded that the interests of justice require dismissal with prejudice only when the prosecutor has delayed in order to obtain a tactical advantage or harass the defendant and the defendant has demonstrated resulting prejudice. *See, e.g.*, *State v. Wills*, 177 Ariz. 592, 594, 870 P.2d 410, 412 (App. 1993); *State v. Granados*, 172 Ariz. 405, 407,

---

[3]Subsection (a) provides the general circumstances under which the state may move for dismissal.

7

837 P.2d 1140, 1142 (App. 1991); *State v. Gilbert*, 172 Ariz. 402, 405, 837 P.2d 1137, 1140 (App. 1991); *see also* Ariz. R. Crim. P. 8.2 (providing time limits within which defendants must be tried).

¶12         However, the comment to the original version of Rule 16.6(d) specified that, in determining whether a dismissal should be with or without prejudice, a trial court should consider "the additional expense, prejudice and anxiety" experienced by a defendant waiting for reprosecution. *See State ex rel. Berger v. Superior Court*, 111 Ariz. 335, 341, 529 P.2d 686, 692 (1974), *quoting* former Ariz. R. Crim. P. 16.7 cmt. (d) (1973).[4] When the rule was later amended to its current form, the foregoing comment apparently was deleted. However, the idea that the interests of justice require balancing the defendant's interests against the state's has survived:

> The reason for the requirement [in Rule 16.6(d) that a court find that dismissal with prejudice is in the interests of justice] is obviously to ensure that the court, prior to dismissing a criminal case, properly balance the conflicting interests involved, society's and the defendant's, in deciding whether to make the dismissal with . . . prejudice.

*State ex rel. Jenney v. Superior Court*, 122 Ariz. 89, 90, 593 P.2d 312, 313 (App. 1979). Thus, in the context of pretrial dismissals, trial courts have always had both the flexibility to weigh the competing interests of the state and the defendant and been provided the authority and discretion to dismiss charges with prejudice when it would be unfair to allow the

---

[4]The original version of Rule 16.6(d) provided: "Dismissal of a prosecution shall be with prejudice to commencement of another prosecution . . . , unless . . . the court in its order finds that the interests of justice require that the dismissal be without prejudice." *See Berger*, 111 Ariz. at 341, 529 P.2d at 692, *quoting* former Ariz. R. Crim. P. 16.7(d) (1973).

prosecution to continue. We see no reason that this balancing of interests should not apply to a motion to dismiss based on successive retrials after hung juries; such a balancing is wholly consistent with and satisfies due process requirements. *Large v. Superior Court*, 148 Ariz. 229, 235, 714 P.2d 399, 405 (1986) ("due process analysis must include consideration of the competing state interest that encroaches on the individual liberty or property right").

¶13        Courts in other states have reached similar conclusions when interpreting language permitting dismissal in the interests or furtherance of justice.[5] *See, e.g.*, *State v. Echols*, 793 P.2d 1066, 1073 (Alaska Ct. App. 1990) (factors for determining whether dismissal in interests of justice include general weighing of defendant's interests against state's); *People v. Orin*, 533 P.2d 193, 199 (Cal. 1975) (whether dismissal warranted "in furtherance of justice" requires consideration of defendant's constitutional rights and interests of society, as represented by state); *State v. Brumage*, 435 N.W.2d 337, 340-41 (Iowa 1989) (holding trial court may dismiss in furtherance of justice after considering "substantive rights of the defendant and the interests of the state"; adopting factors to aid consideration); *State v. Cummins*, 850 P.2d 952, 953 (Mont. 1993) (court weighs defendant's constitutional rights against societal interests to determine whether dismissal in furtherance of justice); *People v. Clayton*, 342 N.Y.S.2d 106, 110 (N.Y. 1973) (applying interests-of-justice test requires "sensitive balance" between defendant and state); *State v. Busch*, 669

---

[5]It is also consistent with the analysis in the out-of-state cases Huffman cited supporting the court's discretion to dismiss an indictment after a mistrial caused by a hung jury. *See Moriwake*, 647 P.2d at 712-13 (finding trial court has inherent authority to dismiss indictment after mistrials caused by hung jury); *Abbati*, 493 A.2d at 517 (same); *Witt*, 572 S.W.2d at 917 (same); *Sauve*, 666 A.2d at 1168 (same).

9

N.E.2d 1125, 1127-28 (Ohio 1996) (trial courts must respond to "rights and interests of the prosecution, the accused, and victims" and "deserve the discretion to be able to craft a solution that works in a given case"). *But see State v. Whitney*, 637 P.2d 956, 958 (Wash. 1981) (trial court has no discretion to dismiss absent government misconduct or arbitrary action).

¶14     The out-of-state cases Huffman cites identify some of the relevant factors to be considered in weighing a defendant's interests against society's. These cases have included such factors as:

> (1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney,

*Abbati*, 493 A.2d at 521-22, and

> the seriousness and circumstances of the charged offense; . . . the extent of harm resulting from the offense; . . . the defendant's history, character, and condition; . . . the length of any pretrial incarceration or any incarceration for related or similar offenses; . . . the purpose and effect of imposing a sentence authorized by the offense; . . . the impact of dismissal on public confidence in the judicial system or on the safety and welfare of the community in the event the defendant is guilty; . . . the existence of any prejudice to [the] defendant as the result of the passage of time; [and] . . . the attitude of the complainant or victim with respect to dismissal of the case,

*Sauve*, 666 A.2d at 1168.

10

¶15 We acknowledge that these and other factors may be quite useful in assessing each party's interests in a particular case; however, we cannot say they are qualitatively different from the general balancing our law already requires. *See Villalpando v. Reagan*, 211 Ariz. 305, ¶ 8, 121 P.3d 172, 175 (App. 2005) (determination of fundamental fairness includes "assessing the several interests that are at stake"), *quoting Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24-25 (1981); *Large*, 148 Ariz. at 235-36, 714 P.2d at 405-06. We thus see no need to limit trial courts to any specific list of factors they may utilize in deciding whether and in what manner a prosecution should be dismissed under the unique circumstances before them. The court's duty is satisfied as long as it has considered the relevant competing interests of the defendant and the state in light of the particular circumstances of each case.

¶16 Turning to the facts of this case, we cannot say the trial court abused its discretion in denying Huffman's motion to dismiss. *See State v. Chavez*, 208 Ariz. 606, ¶ 2, 96 P.3d 1093, 1094 (App. 2004). At oral argument in this court, Huffman argued there was no evidence the trial court considered appropriate factors before ruling on his motion to dismiss and that, even considering the relevant factors, there was no basis on which the court could have concluded a third trial would serve the interests of justice. We disagree. In his motion to dismiss, Huffman argued a third trial was unfair, citing the juries' inability to reach verdicts in the two previous trials, the absence of new evidence, and the amount of time he had spent in custody. However, in its response, the state countered that it had "a reasonable expectation that the state of the evidence at the conclusion of the next trial will be at least

11

similar to, if not more favorable for conviction than that which was presented to the first jury, which apparently voted 11-1 or 10-2 in favor of conviction." Its argument was based on the fact that different witnesses were presented in each of the two previous trials and that it intended to make additional changes in presenting its case at a third trial. Specifically, it would not be introducing a witness who testified for it at the second trial and instead would be introducing a presumably more favorable witness who testified for the defense at the first trial but not at the second. It also intended to present new evidence that had not been introduced at either prior trial, including a recording of a phone call between Huffman and his brother and testimony from a police officer, which would clarify an issue raised by other witness testimony. There was, thus, an adequate basis in the record upon which the trial court could reasonably have concluded the third trial would not be a mere carbon copy of the first and second.

¶17 Huffman also argues that, "by the time of [his] third trial, the State's witnesses, particularly the victims, were well versed in what they needed to say and how they needed to present themselves in order to have a jury believe them." To the extent he contends the witnesses' testimony at the third trial was in some manner inconsistent with their testimony at the two prior trials, Huffman was free to impeach those witnesses with their prior statements, and he does not contend the court precluded him from doing so. *See* Ariz. R. Evid. 613. Nor does he allege the methods the state used to elicit the witnesses' testimony at the third trial constituted prosecutorial misconduct.

12

¶18 Although Huffman complains the trial court's minute entry is silent as to its reasons for denying his motion to dismiss, he has cited no authority that the court was required to state its findings on the record. We similarly have found no support for this proposition, except to the extent that Rule 16.6(d) requires the trial court to state its reasons on the record when *granting* a motion to dismiss a prosecution with prejudice. Because Huffman sought a dismissal with prejudice, presented the court with the authority for his position, and the state responded to his argument on the merits,[6] we must assume the trial court considered the "interests of justice," as Huffman argued it must and, after balancing his interests against the state's, concluded a dismissal with prejudice was not required. Appellate courts

> traditionally give[] great deference to trial court determinations of conflicting procedural, factual or equitable considerations. This is because the trial judge "has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers, and witnesses, and . . . can better assess the impact of what occurs before him."[7]

*State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985), *quoting State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983). Thus, in light of the argument presented to the trial court, we have no basis on which to conclude its ruling amounted to an

---

[6]We believe this is the appropriate procedure for motions to dismiss due to successive prosecutions after hung juries. Once the defendant files a supported motion to dismiss on this ground, we think it is implicit in the trial court's balancing of the parties' competing interests that the state should file a response detailing the circumstances it believes establish that a successive trial is in the interests of justice.

[7]This is particularly true when, as here, the same trial judge who considered the motion to dismiss also presided over each of the defendant's trials.

abuse of discretion.  *See Chavez*, 208 Ariz. 606, ¶ 2, 96 P.3d at 1094; *State v. Sandoval*, 175 Ariz. 343, 347, 857 P.2d 395, 399 (App. 1993) (abuse of discretion is "discretion manifestly unreasonable or exercised on untenable grounds or for untenable reasons").

**Disposition**

¶19        For the reasons stated above, we affirm Huffman's convictions and sentences.


_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge